B. R. HOUGH ET AL. V. JOSIAH HILL ET AL.

1. PRACTICE.—In an action of trespass to try title against several defendants, in which some of the defendants set up title as against the other defendants, and were permitted to take judgment by default against such defendants, who do not appeal, the plaintiff, having lost his suit, cannot complain, on appeal, of such action of the court in regard to the rights of the defendants.

2. PRACTICE—EVIDENCE.—The fact that deeds forming part of the plaintiff's chain of title, in an action of trespass to try title, may have been admitted improperly, over objection to their acknowledgment, &c., when the judgment was for defendants, is no ground for affirming the judgment against plaintiff; having the right, upon the objections being sustained, to prove their execution, he should be allowed the opportunity to do so.

3. PRACTICE.—Where a deed has been admitted by the court, and there is no evidence putting its validity in issue, it is error for the court to submit the validity of such deed to the jury.

4. EXECUTION OF POWER.—If a grantor has power to sell, and sells, his act will pass title, whether he refers to the power or not. His act would pass his own and the interest of his principal.

APPEAL from Milam. Tried below before the Hon. J. N. Onins.

The facts are given in the opinion.

*H. D. Prendergast* and *C. B. Smith,* for appellants, cited

Titus v. Kimbro, 8 Tex., 212; 18 Tex., 150; Watrous v. Mc-Grew, 16 Tex., 506; Dailey v. Starr, 26 Tex., 562; Paschal's Dig., arts. 1233, 4686, 4693, 4984; 2 Bouvier's Ins., sec. 1946; Rogers v. Frost, 14 Tex.. 269; Rogers v. Bracken, 15 Tex., 564; Crane v. Morris, 6 Pet., 598; Kelly v. Jackson, 6 Pet., 622; Newman v. Keffer, 9 Casey, Pa., 442; Stroud v. Springfield, 28 Tex., 663; 1 Greenl. Ev., sec. 145, and note.

*Terrell & Walker*, also for appellants.

*Hancock, West & North*, for appellees.

GOULD, ASSOCIATE JUSTICE.—Appellants brought this action of trespass to try title against a number of defendants, the land in controversy being 2,866 acres of the Samuel Frost headright league. In an amended petition, the plaintiffs also pray for partition, if defendants or any of them be found to have title to a part of the land. Two of the defendants, in addition to their answer, filed a plea of intervention, asking judgment for the same land against some of their co-defendants; and one of the errors assigned is, allowing this plea and allowing intervenors to take judgment by default against their co-defendants. These co-defendants have not appealed, and it is not perceived that the appellants were injured or affected by the intervention or the default, or have any right to complain thereof. The result of the trial was a judgment for defendants, Hammond and Hammon, and from that judgment the plaintiffs, Hough and Connolly, prosecute this appeal. The record shows, that various deeds and instruments, offered in evidence by plaintiffs, were objected to as not properly authenticated, and that these objections were overruled, and the plaintiffs' various muniments of title admitted in evidence. It is not proposed to inquire whether any error was committed in overruling these objections; for such error, if committed, would constitute no sufficient reason why the judgment should be affirmed, if in other respects it is erroneous.

Evidently, if the court had ruled differently, the plaintiffs would have had an opportunity to prove the execution of the deeds and instruments, and thereby secure their admission in evidence; and an erroneous ruling in their favor should not operate to deprive them of this opportunity.

Assuming, then, that the evidence of plaintiffs was properly admitted, it is found that they introduced evidence of a grant of a league to Samuel Frost, in 1834; a conveyance, in 1835, by Frost to W. H. Steele, of 2,866 acres of the league, being the land in controversy; and a conveyance, dated in the town and county of Washington, on June 19, 1838, by W. H. Steele, to his brother, James S. Steele, which last conveyance also included the Robert Moffit and one half of the Samuel White league, making 9,508 acres.

Plaintiff also introduced a notarial copy of a power of attorney, dated October 4, 1838, and reciting that James S. Steele appeared before Thomas Harvey, notary public in the county of Matagorda, and, in the form of a public act, executed before said Harvey a power of attorney, attested by witnesses of assistance and instrumental witnesses, to Alexander H. Livermore, described as residing in the city of New Orleans, State of Louisiana, empowering him to sell and convey " all those lands or parcels of land contained in three deeds made, executed, and recorded in the county of Washington, in favor of said appearer or his assigns, containing, in the whole, nine thousand five hundred (9,500) acres, be the same more or less, English or American measure, which said deeds, the said appearer declared, are in the hands of his said attorney, or would now be more particularly described." Plaintiffs also introduced another power of attorney, dated on February 25, 1839, reciting that James S. Steele appeared before the same officer in the town and county of Matagorda, and by a similar instrument, wherein he is described as a resident of the town, and one of the mercantile firm of Steele & Lewis of the same, appointed Amos H. Livermore, (it seems to have been first written Alexander, that word being

erased, and Amos written over it,) of the city of New Orleans, State of Louisiana, his attorney, to dispose of the following-named and described lands lying in the Republic of Texas, the property of him, the said James S. Steele, viz., one half a league of land on the west fork of the Brazos river, in Milam county, originally granted to Samuel Frost by the Government of Mexico, and by the said Frost conveyed to William H. Steele, and by him conveyed to said James S. Steele. One league of land originally granted to Robert Moffit, lying in Robertson county, on the waters of the Little Brazos, and by him conveyed to William H. Steele, and by him conveyed to said James S. Steele; one league of land lying on the west bank of the Brazos river, above the mouth of Childress creek, originally granted to James S. Steele. By the recitals of this instrument, it appears that Livermore was to apply the proceeds to the payment of debts contracted by the before-mentioned firm, Steele & Lewis, (composed of James S. Steele, William H. Steele, and Asa M. Lewis,) in the aforesaid city of New Orleans.

Plaintiffs also introduced a deed, dated Milam county, June 3, 1839, and acknowledged and recorded in that county on the day of its execution, from A. H. Livermore, as attorney in fact for J. S. Steele, which deed on its face professes to be made "by virtue of a power of attorney from James S. Steele, dated Matagorda, October the 4th, 1838," and conveys to James Bailey 2,866 acres of the Samuel Frost league by metes and bounds, giving the same metes and bounds contained in a deed from Frost to W. H. Steele, in 1835.

The plaintiffs claim under Bailey's title. The defendants claimed under quit-claim deed, from parties admitted to be the heirs of James S. Steele and wife, conveying "the lower part of the league of land granted to Samuel Frost * * * and that part thereof which was conveyed by said Frost to William H. Steele, and by him sold to James S. Steele, referring to these conveyances for a more particular descrip-

tion." In the same deed are also conveyed to defendants the Moffit league and the White half league.

The only evidence whatever in addition to these instruments was the testimony of a witness, that the defendants, except Hammond and Hammon, resided on the land in controversy at the time the suit was instituted, and that James Taylor, one of the defendants who answered with Hammond and Hammon, told the witness that he had contracted with Hammond and Hammon for his land at $5 per acre, and that all the places occupied at the time of testifying had been in the possession of some person since before the war.

Under this evidence, the charge of the court, submitting to the jury the question of limitation under the statute of ten years, was certainly uncalled for; but it is not perceived that this charge could have misled the jury, or have affected plaintiffs injuriously.

The court, however, further instructed the jury, that "if the power of attorney included the land in controversy, and it and the deed are genuine," the deed from Livermore divested all title to the land out of Steele. And again: "But if the title passed out of James S. Steele by the execution of either the power of attorney of October 4, 1838, (or) and February 25, 1839, (and it did pass out of him if either power is genuine,) then the intervenors can recover nothing in this suit."

It is contended for appellees, that it devolved on the plaintiffs to establish by proof that Amos and Alexander Livermore were the same person, and that the two powers of attorney referred to the same land; that the plaintiffs failed to produce such evidence, and that, consequently, their case fell to the ground. Certainly these are questions naturally growing out of the instruments in evidence, and in regard to which parol evidence would have been proper. But we are not prepared to say that there was not evidence before the jury from which they might have arrived at the conclusion that the two powers of attorney were to the same person, and

both referred to the land in controversy. Whether the evidence was sufficient on these points, is a question on which no opinion is expressed, but they were matters on which the plaintiffs were entitled to have the jury pass as questions of fact, and which the court should have fairly submitted to the jury, under appropriate instructions. But the charge of the court, instead of submitting to the jury the question of the identity of Amos and Alexander Livermore, submitted to them the very different question of the powers of attorney. As these powers of attorney had been admitted in evidence, and the question of their genuineness, or actual execution by James S. Steele, was not raised by the evidence, it was error in the court to submit the question to the jury. We think that this error may have misled the jury to the prejudice of plaintiffs. Being an erroneous instruction on a material point which may have influenced the jury, it entitles the appellants to have the judgment reversed. (Bailey v. Mills, 27 Tex., 434; Chandler v. Fulton, 10 Tex., 22.)

Notwithstanding the fact that the deed to Bailey purports to have been made by virtue of the first power of attorney, and is silent as to any other power, we think that if A. H. Livermore, who, as attorney in fact for James S. Steele, executed that deed, was, in reality, by virtue of the second power of attorney, empowered to do so, the deed would be valid. In the case of Allison v. Kurtz, 2 Watts, 189, the court refer to Powell on Powers, (p. 111,) and say: "Powers executed by deed or will need not recite or refer to the instrument creating the power, if the act done be such as cannot take effect but by virtue of the power; and though improperly recited, the execution is valid." In another case, the same court say: "The court is governed by the intention of the parties, without regard to the form of the instrument, so as to pass the whole interest the grantor has in the premises, whether derived from an appointment or in his own right. A man may therefore execute a power without taking the slightest notice of it." (Robbins v. Bellas, 4 Watts, 256; see

also Rogers *v.* Bracken, 15 Tex., 564; and Newman *v.* Keffer, 9 Casey, 442.)

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.