HUMBLE OIL & REFINING COMPANY V. LON A. MULLICAN.

No. A-770. Decided February 20, 1946.
Rehearing overruled March 20, 1946.
(192 S. W., 2d Series, 770.)

Justices Simpson, Smedley and Folley, dissent.

*Rex G. Baker, Ralph B. Lee* and *R. E. Seagler,* all of Houston, for petitioner.

The Court of Civil Appeals erred in holding that there was no language in the second lease which could be reasonably construed together with other language therein, as meaning that it was the intention of the parties to execute a new and independent lease contract as a substitute for the former contract. Cities Service Co. v. Dunlap, 308 U. S. 208; Teagarden v. Godley Lbr. Co., 105 Texas 616, 154 S. W. 973; Bailey v. Willeke, 144 Texas, 157, 189 S. W. (2d) 477.

*W. D. Girand* and *W. W. Campbell,* both of Lubbock, for respondent.

The contract lease of March 18 was not effective as a lease in lieu of the January lease but was a correction as to the capacity in which lessor executed the January lease. Wilkins v. Dagle, 265 S. W. 918; City Natl. Bank v. El Paso & N. E. Ry. Co., 225 S. W. 391; 36 Tex. Jur. 723.

CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This suit involves the question as to when the annual rentals were payable under a certain oil and gas mining lease.

Lon A. Mullican and wife owned a tract of land as their community property. She died intestate and he qualified as community administrator of her estate. Thereafter he executed an oil and gas mining lease on the land. The first sentence of this lease read as follows:

"This agreement made this 27th day of January, 1944, between Lon A. Mullican, individually, and as independent executor of the estate of Molly Mullican, deceased, Lessor (whether one or more), and G. B. Hallmark, Lessee."

The lease was in the usual form and was signed "Lon A. Mullican, Individually and as Executor of the Estate of Mollie Mullican, deceased." It was to run for a period of ten years, and contained the following clause:

"If operations for drilling are not commenced on said land on or before one year from this date the lease shall then terminate as to both parties, unless on or before such anniversary date lessee shall pay or tender to Lessor or to the credit of Lessor in Lubbock National Bank at Lubbock, Texas, * * * the sum

of Three hundred twenty and 26/100 dollars ($320.26) (herein called rental), * * *."

Later Mullican executed a second lease on the same land. The first sentence of the second lease read as follows:

"This agreement made this 18th day of March, 1944, between Lon A. Mullican, Individually, and as Community Administra- of the Estate of Mollie E. Mullican, Deceased, Lessor (whether one or more) and G. B. Hallmark, Lessee." It was signed "Lon A. Mullican, Individually, and as Community Administrator of the Estate of Mollie E. Mullican, Deceased," and was otherwise in identically the same language as the first lease, except there was attached to the front page of the lease a typewritten slip containing the following language:

"This lease is in lieu and correction of a prior lease dated 27th day of January, 1944, and recorded in Volume 8, page 595, Oil and Gas Lease Records of Lubbock County, Texas, wherein same was executed by Lon A. Mullican, Individually and as Independent Executor of the Estate of Molly Mullican, Deceased, which was erroneous in that it should have been executed by Lon A. Mullican, Individually and as Community Administrator of the Estate of Mollie E. Mullican, Deceased, as said Mollie E. Mullican died intestate and Lon A. Mullican qualified as Community Administrator of her estate as per the Probate Records of Lubbock County, Texas."

The lease was assigned through various parties to the Humble Oil & Refining Company and was owned by that company at the time of the filing of this suit. The lessee did not tender the annual rentals nor begin drilling operations on the land on or before January 27, 1945, and as a result the lessor brought suit to cancel the lease. The Humble Oil & Refining Company alleged the execution of the second lease and contended that it was executed in lieu of and to take the place of the prior lease, and that under the terms of that lease lessee had until March 18, 1945, in which to pay the rentals. It tendered the rentals before March 18, 1945. The plaintiff by supplemental petition alleged that the lessee requested the execution of the second instrument because the first one had been executed by Mullican as Independent Executor of his wife's estate, whereas he should have executed the same as Community Administrator of his wife's estate; that no new consideration was paid for the second contract and that it was not intended as a novation or as a substitute for the first one. nor for the purpose of changing the term of the original lease, but only as a ratification or cor-

rection of the original lease in the respect above indicated, and that all of the parties so understood. He alleged that the second contract should be construed "as a mere perfection of the title to the lease of January 27, 1944, and not as a new and independent lease discharging the said lease of January 27, 1944." It was his contention that the annual rentals were payable within one year from the date of the original lease, and that the lease lapsed because of the failure to pay the rentals as therein provided. Upon the trial he introduced evidence to sustain his contention. The trial court, upon a trial without a jury, sustained plaintiff's contention and cancelled the lease for the failure to pay the rentals on or before January 27, 1945. This judgment was affirmed by the Court of Civil Appeals. 190 S. W. (2d) 392.

There is no doubt about the sufficiency of the evidence to sustain plaintiff's contention. He testified without contradiction that in March, 1944, lessee expressed a fear that the first lease might not be good because it had not been executed in the proper capacity, and requested plaintiff to correct the defect; that lessee had prepared a correction lease and requested him to sign it; that lessee told lessor that the second lease was the same as the prior lease and was to be executed only for the purpose of correcting the defect as to the capacity in which the prior lease had been executed; that both parties so understood it; that both parties understood and agreed that the terms of the first lease should remain in force, and that the second lease did not change the terms of the first lease, but "was merely to verify the correctness of" the first lease. He also testified that the consideration paid for the first lease was $5.00 per acre, and that no new consideration was paid for the second lease. This evidence was not contradicted. The only question is, was this evidence admissible?

■ Under well-established rules, if a written contract is ambiguous or its meaning is doubtful, parol evidence is admissible to explain its meaning and remove the ambiguity, in order that the court may arrive at the true intent of the parties; otherwise such parol evidence is inadmissible. 17 Tex. Jur. 864-873; 32 C. J. S. 981; Lemp v. Armengol, 86 Texas 690, 26 S. W. 941; Hueske v. Broussard & Co., 55 Texas 201; State National Bank of Corpus Christi v. Morgan, 135 Texas 509, 143 S. W. (2d) 757; Pitts v. Camp County, 120 Texas 558, 39 S. W. (2d) 608.

■ While the question is not easy of solution, we have reached the conclusion that the contract here under consideration is ambiguous and that parol evidence was admissible to explain its meaning.

■ It will be noted that the second agreement was entered into March 18, 1944, and it provides that "if operations for drilling are not commenced on said land on or before one year from *this date* the lease shall then terminate as to both parties" unless the annual rentals are paid. (Italics ours.) This provision standing alone would permit the payment of the annual rentals on or before March 18, 1945. The second lease had attached to it a statement that it was executed "in lieu" of the prior lease, and this statement, uninfluenced by other provisions, would indicate that it was to serve as a substitute for or in place of the prior lease. 31 C. J. 361. But the statement attached to the second agreement did not stop with a recitation that it was executed "in lieu" of the first lease. It went further and recited that it was executed "in lieu and correction" of the prior lease and pointed out with particularly the defect which was intended to be corrected. It recited that the prior lease had been executed by Mullican individually and as independent executor of his wife's estate, whereas it should have been executed by Mullican individually and as community administrator of his wife's estate. There was no intimation that the original lease was defective in so far as it attempted to convey Mullican's individual interest in the property, nor that there was any need for correction in this respect. The defect which the parties had attempted to correct pertained only to the capacity in which Mullican had undertaken to convey the interest in the property formerly belonging to his wife. This is made clear by the statement attached to the second agreement. It pointed out the book and page of the public records where the instrument which was to be corrected could be found, and one comparing the two instruments would find that the body of the first instrument has been brought forward, word for word, in the second agreement. The provision requiring the payment of annual rentals "on or before this date" was a part of the printed form commonly in use, and it was brought forward in the second agreement in the same language as had been used in the instrument which was being corrected. The revenue stamps on the first instrument indicated that substantial consideration had been paid for the lease. There were no stamps on the second agreement, thus indicating that little or no consideration had been paid for it.

The first lease was certainly good as to Mullican's one-half interest in the property. Under the authorities, it was probably good as to the interest formerly owned by his wife. Rev. Stat. Art. 3669; McCraw v. Merchants & Planters Nat. Bank of Sherman, 34 S. W. (2d) 633 (writ refused) ; Hough v. Hill, 47 Texas 148; Link v. Page, 72 Texas 592, 10 S. W. 699. But the

parties desired to remove all doubt in this respect, and they executed the second agreement to correct this defect.

It is true that the introductory paragraph of the correction agreement stated that it was made on March 18, 1944, and the agreement concluded, "this instrument is executed on the date first above written"; but one examining the two instruments in the light of the fact that the express purpose of the second agreement, and apparently the only purpose, was to change the capacity in which Mullican had undertaken to convey his deceased wife's interest in the property, might very well conclude that this was intended merely to indicate the date which the correction as to capacity had been made, and not as a new date from which to begin to calculate the time for the payment of the annual rentals as well as the running of the ten-year period for which the lease was to run.

The words "in lieu of" when read in the light of the expressed purpose intended to be accomplished, do not necessarily imply an intention to substitute the second agreement for the first one. Joiner v. Joiner (Miss.), 78 So. 369. The instrument when read as a whole is subject to the construction that it was intended merely as a correction of the original instrument as to the capacity in which it had been executed, and not as a substitute for the original lease.

Since the contract was ambiguous and the admissible parol evidence showed an intention to correct and ratify the original lease, the trial court and Court of Civil Appeals correctly held that the lease had lapsed for the failure to pay the annual rentals on or before January 27, 1945.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered February 20, 1946.

Rehearing overruled March 20, 1946.

MR. JUSTICE SIMPSON, dissenting.

The opinion of the majority appears to me to run so contrary to the plain meaning of the oil and gas lease in question that I feel constrained respectfully to enter my dissent. I am mindful that the district court, the Court of Civil Appeals, and a majority of this Court have determined that the lease is an ambiguous one. With all deference to the views of these able jurists, I believe the lease is quite unambiguous and that testimony should not have been let in to vary its terms.

The majority opinion proceeds, as I understand it, upon the assumption that had it not been for the supposed ambiguity in the questioned lease, the petitioner would have been entitled to prevail. In stating my views I shall proceed upon this assumption.

Looking to the lease of March 18, 1944, we find within its "four corners" a complete agreement. It stated that the lease was given "in lieu and correction of a prior lease dated 27th day of January, 1944 * * * executed by Lon A. Mullican, Individually and as Independent Executor of the Estate of Molly Mullican, Deceased, which was erroneous in that it should have been executed by Lon A. Mullican, Individually and as Community Administrator of the Estate of Mollie E. Mullican, Deceased, as said Mollie E. Mullican died intestate and Lon A. Mullican qualified as Community Administrator of her estate * * *." It is obvious that the parties were not satisfied with the sufficiency of the first instrument and concluded to start all over again. So they explicitly and simply stated in the second lease that it was "in lieu and correction" of the first one. There was no longer any need to refer to any part of the old lease for any purpose. New complete provisions, including a new delay rental payment date, were published by the parties in their new agreement. They contracted in what I submit are plain and unequivocal terms,—terms by which the court ought to declare them bound.

The words "in lieu of" mean "in place of; instead of; in substitution for." 42 C. J. S. 477. Manifestly, as a matter of law, the plain language of the new lease effectively corrected the old agreement and substituted the new one for it, and if we give the language the parties have employed its usual and commonly understood significance, I think it abundantly clear that there is no uncertainty or ambiguity which requires evidence to explain. The addition of the words "and correction of" to the term "in lieu of" does not confuse what was meant in the slightest. The two phrases are harmonious and consistent, and emphasize, as I see it, a clear, unequivocal intention of the parties to do what they stated they were doing, that is, to substitute a new agreement for the old one.

Elementary principles require that the court give effect to the intention of the parties as expressed in the language they have used. The word "construction" implies uncertainty as to the meaning of the contract, and where the agreement is clear and unambiguous there is nothing to be construed. The courts will not by construction import an ambiguity into a contract

which is plain and certain, and give the agreement a different operative effect from what it plaintly provides. 10 Tex. Jur. 271 et. seq.; 14 Tex. Jur. 910 et seq.; 31 Tex. Jur. 612 et seq. It appears to me clear that the majority opinion substantially trenches upon these principles.

It will also be agreed, I take it, that forfeitures are not favored by the courts and that this principle has application to an oil and gas lease. Thus, Judge Leddy stated in Ryan v. Kent (Tex. Com. App.), 36 S. W. (2d) 1007:

"Forfeitures are not favored at law and will only be decreed where the provision therefor is clear and specific. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S. W. (2d) 27, and authorities there cited. 'The authority to forfeit a vested right or estate,' says Judge Stayton, in Benavides v. Hunt, 79 Tex. 392, 15 S. W. 396, 399, 'should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear—whose unequivocal character may render its exercise fair and rightful.' Decker v. Kirlicks, 110 Tex. 94, 216 S. W. 385, 386.

"This rule of construction is universally applied to oil leases. It must therefore be held that, if this contract is fairly susceptible of two interpretations it should be so construed as to prevent a forfeiture of the rights granted thereunder. Adams v. Fidelity Lumber Co. (Tex. Civ. App.) 201 S. W. 1034; Decker v. Kirlicks, 110 Tex. 94, 216 S. W. 385, 386."

The rules thus announced indicates that even if the lease were susceptible of two constructions, one of which would result in a forfeiture and the other of which would not, the trial court should have embraced the latter construction in order to avoid a forfeiture. And even were it conceded that the majority is correct in stating that there is an ambiguity, under Ryan v. Kent and the authorities it follows, it would be the duty of the court to avoid a forfeiture and sustain the lease.

Much the same sort of case as this was decided in Poitevent v. Scarborough, 103 Texas 111, 124 S. W. 87. In that case, Poitevent made Scarborough a deed in 1882 which conveyed certain lands including a certain 109-acre tract. In 1892, an objection to the sufficiency of the description of the lands so conveyed was made by a bank to whom Scarborough wanted to give a mortgage, and a new deed was made to Scarborough, which was accepted in lieu of the first, describing two other tracts of land but entirely omitting to describe the 109 acres. The following

clause occurred immediately after the description in the second deed:

"These lands being the same lands sold to said A. B. Scarborough on the 2d of March, 1881, and described in said deed dated March 2d, 1881, and delivered to said Scarborough, conveying said lands to him. This deed being made to give a more full and complete description of the said land."

It was also recited in the deed that the consideration for the conveyance was the payment of the purchase money notes mentioned in the first deed. The trial court and the Court of Civil Appeals found for Scarborough and awarded him title to the 109-acre tract. This judgment was reversed. This Court, speaking through Associate Justice Brown, stated:

"* * * Looking to the terms of the deed and the recitals in it, it is very clear that the second deed was substituted for the first, and by its very terms it is stated that the land described therein was the very land conveyed in the first. The plaintiff is estopped by the terms of the second deed from claiming any of the land which is not embraced therein. * * * *The effect of the second deed made to the plaintiff was a question of law for the court to decide, and it was error to submit that issue to the jury. The court should have instructed the jury to return a verdict for defendants.*" (Emphasis supplied.)

If Justice Brown had pursued such reasoning as the majority has sanctioned in the present case, I deem it certain he would have arrived at exactly the opposite conclusion.

The very simplicity of the language used in the questioned lease speaks so effectively for the construction I believe the proper one that I shall not pursue numerous other and obvious arguments which inevitably present themselves. At the end of it all, we would still find ourselves with a plain, unequivocal provision in a lease, giving petitioner the right to defer the commencement of drilling operations for one year by paying rentals on or before March 18, 1945. The petitioner complied with this provision. The lease was thus kept in full force and I believe the trial court erred in not so holding.

Associate Justices SMEDLEY and FOLLEY concurring.

Opinion delivered February 20, 1946.