The LIFE INSURANCE COMPANY OF VIRGINIA, Plaintiff-Appellant Cross-Appellee,

v.

The MURRAY INVESTMENT COMPANY and Murray Advisory Corporation, Defendants-Appellees Cross-Appellants.

No. 79–3266.

United States Court of Appeals, Fifth Circuit. Unit A

May 29, 1981.

Opinion on Rehearing July 29, 1981. See 651 F.2d 1090.

Coke & Coke, E. Russell Nunnally, T. L. Caudle, III, Debra A. Olson, Dallas, Tex., for plaintiff-appellant cross-appellee.

Rain, Harrell, Emery, Young & Doke, Robert W. Jordan, Sidney A. Fitzwater, Dallas, Tex., for defendants-appellees cross-appellants.

Before RUBIN and GARZA, Circuit Judges, and SUTTLE*, District Judge.

GARZA, Circuit Judge:

This case involves the purchase of a real estate note by the Life Insurance Company of Virginia (LOV) plaintiff-appellant from The Murray Investment Company (MIC) and Murray Advisory Corporation (MAC) defendant-appellees, cross-appellants. The trial resulted in judgment for LOV from which all parties now appeal. Only for the purpose of context in discussing those issues on appeal which we believe meritorious do we set forth a brief statement of the facts.

I.

LOV, a life insurance company, as part of its investment program, purchased long-term real estate notes. Over the years LOV had business relations with Home Mortgage, a real estate financing company. Shortly before the transaction involved here, Home Mortgage merged into MIC and on April 18, 1973, LOV and MIC entered a

* Distirict Judge of the Western District of Texas, sitting by designation.

Correspondent Loan Agreement whereby MIC was to submit loan applications to LOV and service, on behalf of LOV, any loans purchased by LOV.

During April, 1973, Home Mortgage had forwarded to LOV a loan application for long-term real estate financing from the Gar-Dal Venture (later to become Gar-Dal, Inc.) for the purchase of real estate in Dallas and construction of a 52,064 square foot office building thereon. MIC took over the processing of this loan application after the merger.

The transaction was structured for LOV to purchase a complete loan package including a note and all applicable security agreements from MIC after all construction was complete. Pursuant to this proposed loan, MIC sent plans and specifications for the building to LOV for its approval. Soon thereafter LOV approved the terms of the transaction and the parties' obligations were set forth in a Loan Commitment in which LOV obligated itself to purchase the first mortgage loan on the Gar-Dal Venture from MIC. However, as a prerequisite to LOV's obligation to purchase the mortgage, certain conditions were to be fulfilled including that (1) the building and 155 parking spaces be completed according to plans at cost of no less than $1,050,000; (2) MIC was to furnish quarterly reports certifying construction was proceeding according to plans; (3) upon completion MIC was to certify that all construction had been completed according to plans; and (4) that Hamby & Shaver lease and occupy 20,000 square feet of the building. After the Loan Commitment was signed, MIC arranged for interim financing from Murray Real Estate Investment Trust which in turn utilized the services of MAC as its advisor and working arm in the management of real estate loans.

After commencement of construction, MIC sent the required quarterly inspection reports to LOV, however, most of the inspection reports had been prepared by MAC. Over the next year LOV received reports from officers of both MAC and MIC stating that all construction was proceeding "according to plans and specifications", "quality and workmanship have been superior", and the project was progressing "extremely well". LOV was advised by MIC that construction had been completed and after inspection had been found to have been constructed in accordance with plans and specifications. No representative from LOV ever inspected the project site, but upon the representations of MIC and MAC the final inspection report, and the completion certificate, LOV decided to purchase the loan. The loan was transferred and collateral assigned to LOV on December 3, 1974. On December 17, 1974, LOV paid $1,050,000 for the note.

Following the purchase of the loan, Gar-Dal, Inc. made one monthly mortgage payment and thereafter defaulted. LOV accelerated the indebtedness of the loan. Shortly thereafter, LOV first learned that Gar-Dal, Inc. had run into trouble because it had run out of money for tenant improvements. Prior to receiving this information LOV had been told that the principals of Gar-Dal had substantial net worth. Upon further investigation LOV learned that the building and real improvements had substantial defects and did not comply with the plans and specifications. Following the default, LOV requested that MIC buy back the loan but MIC refused. A public foreclosure sale was held and LOV purchased the property for $750,000.

Among the defects was a large, unsightly, twenty-foot deep ditch bordering the property which severely limited access to the building and reduced parking by one-third of that required by the plans. In addition, it was learned that Hamby and Shaver had never taken occupancy of any part of the premises. Furthermore, many deviations from the plans had occurred and much of the construction was defective. LOV further learned that both MIC and MAC, prior to LOV's purchase of the loan, knew the facts about the ditch, parking conditions, non-occupancy of the building, cost overruns and other deviations and defects.

## II.

LOV filed this lawsuit setting forth causes of action for common law fraud and conspiracy to defraud; fraud in a transaction involving real estate in violation of Texas Statute, Tex. Bus. and Comm. Code Ann. § 27.01; tortious breach of contract and conspiracy to bring about such breach of contract; violation of Article 581–33 of the Securities Act of Texas; violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder; and violation of Section 17(a) of the Securities Act of 1933. The District Court dismissed the claims under the Texas Securities Act, the Securities Exchange Act, and the Securities Act of 1933, holding that the note purchased was not a "security".[1]

Pursuant to its common law fraud cause of action, LOV initially sought rescission of the loan purchase. However, three days prior to trial LOV alternatively sought consequential damages. The District Court refused to permit LOV to replead consequential damages holding that MIC and MAC would be placed in an unfair position because they would not have had proper discovery concerning the consequential damage claims.

■ The jury found that MIC had breached its contract by falsely representing (1) that the property was constructed and completed according to plans; (2) that

Hamby and Shaver occupied their leased portion of the building; (3) the quarterly inspection reports. The jury further found that MIC and MAC knew the representations were false when made, that the representations were material to the contract, and that each representation was relied upon to the detriment of LOV. The jury further found that MIC and MAC had conspired to make the false representations. The jury found that the difference between the fair market value of the note was $300,000 less than was paid for it and that 50% of such difference was proximately caused by at least one of the false representations made by MIC and at least one false representation made by MAC.[2] Lastly, in conjunction with the Section 27.01 questions, the jury found that exemplary damages should be awarded in the amount of $500,000. The District Court instructed the jury that exemplary damages may be awarded as punishment for a wrongful act done "willfully." The District Court instructed the jury that a "willful" act is done knowingly, intentionally, deliberately or designedly.

■ Following the jury's verdict, the District Court awarded actual damages in the amount of $300,000 jointly and severally against MIC and MAC plus post-judgment interest.[3] The District Court refused to award exemplary damages holding that

---

1. LOV does not now complain of the District Court's dismissal of these causes of action.

2. The jury also found that both MIC and MAC had committed every element of common law fraud and every element of fraud in a transaction involving real estate as prohibited by Section 27.01. The District Court ruled that Section 27.01 was not applicable to the transaction here because no *sale* of real estate was involved as contemplated by the statute. LOV has raised this holding as an issue on appeal. After careful consideration of the Texas case law, we are convinced the statute reaches only those transactions involving the actual or potential sale or purchase of real estate and, therefore, we hold that the District Court was correct in its finding that Section 27.01 is not applicable to the transaction here involved.

3. LOV on appeal argues it was entitled to pre-judgment interest. We find the District Court did not err in refusing to award pre-judgment

interest. In Texas pre-judgment interest is recoverable as a matter of right only when damages are established as of a definite time and the amount of damages is definitely determinable. *Black Lake Pipeline Co. v. Union Construction Co.*, 538 S.W.2d 80 (Tex.1976). In this case, both the measure (the difference between the value of the note and the value of the note as represented) and the amount of damages was entirely dependent upon resolution of factual issues by the jury and therefore the amount was not definitely determinable prior to trial. We do not reach the issue of whether or not LOV's failure to specifically plead for pre-judgment interest would defeat its claim under either Texas law or federal pleading requirements. *See Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109 (Tex.1978) (collected authorities).

LOV had proved only a breach of contract—not a separate tort as required under Texas law. Lastly, the District Court denied attorney's fees on the basis that Article 2226, V.A.T.S. did not allow attorney's fees to corporations at the time this suit was filed.

### III.

On Appeal LOV contends that the District Court erred in (1) refusing to award attorney's fees, and (2) refusing to award exemplary damages.

### A.

In support of this latter issue, LOV contends exemplary damages were awardable based upon the jury's finding of tortious breach of contract, common law fraud and conspiracy to defraud. Specifically, LOV argues that, under Texas law, if the act complained of constitutes both a breach of contract and a willful tort, exemplary damages are recoverable. Secondly, LOV argues that the jury findings of all elements of common law fraud, including the fact that MIC and MAC knew their representations were false at the time they were made, also stands as a basis for exemplary damages. Lastly, LOV argues that the jury findings of conspiracy to defraud also supports an award of exemplary damages.

■ In Texas the general rule is that a breach of contract will not give rise to a recovery of exemplary damages. However, if the act complained of constitutes *both* a breach of contract and a willful tort, exemplary damages are recoverable. *International Bankers Life Insurance Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963); *Roy Gladen Buick, Inc. v. Sterling*, 524 S.W.2d 590 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.); *Export Insurance Co. v. Herrera*, 426 S.W.2d 895 (Tex.Civ.App—Corpus Christi

1968, writ ref'd n. r. e.); *Briggs v. Rodriguez*, 236 S.W.2d 510 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.); *See Kingsley v. Baker/Beech Nut Corporation*, 546 F.2d 1136 (5th Cir. 1977). It is not necessary that the tort and contract claims arise out of separate and distinct transactions, but only that the transaction be actionable as a tort in addition to breach of contract. *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, 540 S.W.2d 380 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). In the recent case of *Amoco Production Co. v. Alexander*, 594 S.W.2d 467 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ granted) the defendant argued that the plaintiff had not pled fraud and that exemplary damages would not be recoverable for the breach of contract even if such breach were accompanied by malice. In rejecting this contention, the court stated "while the foregoing pleading does not specifically allege fraud, it does set forth averments which, if proven, would support an action in tort." The court concluded that exemplary damages could be awarded for tortious breach of contract.[4]

■ As with a tortious breach of contract, in Texas exemplary damages could be awardable for common law fraud where the misrepresentation is made willfully and with knowledge of its falsity at the time made. *Baker v. Moody*, 219 F.2d 368 (5th Cir. 1955); *Griffin v. Phillips*, 542 S.W.2d 432 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.); *Success Motivation Institute Inc. v. Lawlis*, 503 S.W.2d 864 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.).

MIC and MAC defend the District Court's denial of exemplary damages by contending that the special issues submitted to the jury regarding fraud[5] were only submitted pursuant to the Section 27.01 cause of action and, since Section 27.01 is not available as a

---

4. Although the Texas Supreme Court has granted Writ of Error on several points, including the proposition for which the case is herein cited, a reversal of this point would not require a contrary result in this case.

5. The jury specifically found that MIC and MAC made and conspired to make false repre-

sentations for the purpose of inducing it to purchase the note; that such false representations were of a past or existing material fact and were relied upon by LOV in purchasing the note; that such false representations were of facts required by the terms of the Loan Com-

method for recovery, the jury findings of fraud may not serve as a basis for the tortious conduct necessary for an award of exemplary damages. The defendants also contend that, because the District Court refused LOV permission to amend its pleadings to include consequential damages based upon fraud and because LOV did not at trial seek recission based upon fraud, the issue of common law fraud was effectively removed from the case.

■ Taking this latter argument first, an examination of the record clearly indicates that, while LOV's original or subsequent complaints do not specifically set forth a claim for relief entitled "common law fraud", the Complaints clearly plead facts which, if proven, would constitute common law fraud and such facts were incorporated by reference within LOV's Breach of Contract claim for relief. As previously mentioned, the District Court refused LOV's request to amend to seek consequential damages based upon a common law fraud theory because the defendants lacked adequate discovery concerning such measure of damages. However, the Court did not remove the factual basis of fraud which had been pled and upon which the Breach of Contract cause of action was based. We find that LOV's pleadings were sufficient to raise the fraud as a basis for its breach of contract cause of action.

Regarding the defendant's first argument, it is true that the District Court expressed doubt as to the applicability of Section 27.01 as a cause of action. In its Memorandum Opinion, dated April 5, 1979, the Court specifically held that if Section 27.01 were found inapplicable, LOV would be "left with a straight breach of contract claim, and exemplary damages would not be recoverable..." We have held (see n.2) that the District Court was correct regarding the inapplicability of Section 27.01. However, the inapplicability of Section 27.01 as a legal remedy in no way negates the fact issues submitted to the jury regarding fraud. Through several special issues the jury found each and every factual element

of fraud against both defendants and also found that each knew that their representations were false at the time they were made. We find that the District Court erred in disregarding the jury's findings of fraud as a basis for the tortious conduct necessary for exemplary damages and, under either the tortious breach of contract theory or upon the fraud theory, hold that LOV should have been awarded the exemplary damages as found by the jury.

### B.

■ We now address the issue of attorney's fees. The District Court, by Order dated August 14, 1979, held that LOV could not avail itself of the attorney's fees provisions for breach of contract as provided for in Article 2226 V.A.T.S. The District Court relied on the case of *Adams v. Big-3 Industries, Inc.*, 549 S.W.2d 411 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.) wherein the Texas Court of Civil Appeals held that, since the corporate parties to the lawsuit had entered the disputed contract prior to the 1977 amendment to Article 2226 (allowing corporations to recover attorney's fees in contract actions), the plaintiff corporation could not recover attorney's fees. There being no factual distinction between *Adams* and the case before it, the District Court refused to allow attorney's fees.

In reaching its decision the District Court did not consider the June 6, 1979 amendments to Article 2226 and LOV now asks this court to consider these amendments in support of its claim for attorney's fees. The amendments added to the end of Section 1 this statement: "This Act shall be liberally construed to promote its underlying purposes." The amendments also added Section 2 which provides:

"This Act is remedial in character and is intended to apply to all pending and future actions, regardless of the time of institution thereof or of the accrual of any cause of action asserted."

LOV argues that, since final judgment was not rendered until August 20, 1979, the case was "pending" and therefore a case in

mitment; that such false representations were the proximate cause of damage to LOV; and

that the false representations were known to be false at the time they were made.

which attorney's fees are to be awarded.[6] MIC and MAC, in opposition, argue that the contract was entered into, breached, and this case tried prior to the effective date of the 1979 amendments and thus to apply the 1979 version of Article 2226 to this case would violate Article I, § 16 of the Texas Constitution which forbids retroactive laws.[7]

There is some merit to appellee's contention. It is true that the Texas Constitution goes further than the United States Constitution since the Texas Constitution forbids all retroactive laws—not simply criminal or penal laws. Indeed, several Texas cases have held that earlier amendments to Article 2226 should be strictly construed and could not be given retroactive effect.[8] However, it is equally true that the Constitution's ban on retroactive laws does not apply to remedial or procedural legislation.[9]

It is the judgment of this Court that the Texas Legislature intended for the attorney's fees provisions of Article 2226 to be given their broadest application by specifically providing Article 2226 to be a remedial statute to be applied to *all pending* actions at the time of its effective date. *See Villiers v. Republic Financial Services, Inc.*, 602 S.W.2d 566 (Tex.Civ.App.—Texarkana 1980, no writ history); *Glass Containers Corp. v. Miller Brewing Co.*, 643 F.2d 308 (5th Cir. 1981); *Reynolds v. Allstate Ins. Co.*, 629 F.2d 1111, *modified on rehearing*, 633 F.2d 1208, 1209 (5th Cir. 1981). We believe the plain language of Article 2226 requires allowance of attorney's fees in this case and we, therefore, hold the District Court erred in denying LOV attorney's fees and remand the case for a determination of reasonable attorney's fees.

Finding no merit in the remaining issues on appeal or cross-appeal,[10] the judgment is reversed and remanded for entry of judgment of exemplary damages and for determination of reasonable attorney's fees and is affirmed in all other respects.

AFFIRMED in part; REVERSED and REMANDED in part.

---

6. There is no doubt that under Texas law the present case was "pending" at the time of the 1979 amendment. *See Schwartz v. Jefferson*, 520 S.W.2d 881 (Tex.1975).

7. Article I, § 16 of the Texas Constitution provides:

"No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

8. In *Government Personnel Mutual Life Ins. Co. v. Wear*, 151 Tex. 454, 251 S.W.2d 525 (1952), the Texas Supreme Court refused retroactive application to the 1949 amendments to Article 2226. In its opinion the Court made its reasoning clear:

"There is no language used in the Article indicating that it was the intention of the Legislature that such Article should operate retrospectively. If an Act is intended to operate retrospectively, that intention must be clearly shown in the language of the Act, and it will not ordinarily be inferred. Had the Legislature intended the amended act should apply [retrospectively] . . . it could have plainly said so." 251 S.W.2d at 529.

9. *See* Tex.Jur.2d, Constitutional Law §§ 115–131.

10. MIC and MAC on cross-appeal advance three issues against the judgment of the District Court. First, MAC argues that judgment should not have been awarded against it for breach of contract since it was not a party to the loan commitment. Second, both argue there was no legally compensable damage flowing from the breach of contract, therefore, the award of damages was improper. Last, both argue there was insufficient evidence to support the award of actual damages. After reviewing the record and authorities, we find all of these arguments without merit.