John CONWAY and Jeanne Conway,

v.

**SAUDI ARABIAN OIL COMPANY
and Aramco Services Co.**

**Civ. A. No. C–93–149.**

United States District Court
S.D. Texas,
Corpus Christi Division.

Aug. 4, 1994.

**540**

Wilson Calhoun, Meredith, Donnell & Abernethy, Corpus Christi, TX, for plaintiff.

Robert Ellison Meadows, Sewell & Riggs, Houston, TX, for defendant.

### AMENDED ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JACK, District Judge.

On this date, came on to be heard Defendants Saudi Arabian Oil Company ["Saudi Arabian"] and Aramco Services Company ["Aramco"] Motion for Summary Judgment and the Plaintiff's Response to Defendant's Motion for Summary Judgment.

### I. JURISDICTION

This cause of action is in federal court as a result of a removal pursuant to 28 U.S.C. § 1441(d), § 1446, §§ 1602 *et seq.*

### II. FACTS

Plaintiff, John Conway, entered into negotiations with Defendants. On or about June 3, 1991, John Conway accepted a conditional employment offer with Saudi Arabian made to him by their authorized agent Aramco. Plaintiffs allege that prior to acceptance Aramco recruiter, Dottie Hunter, indicated to them that John Conway would be assigned to Ras–Tanura. Plaintiffs desired this site because it is located on the water and would enable them to enjoy various watersports. In addition to the offer letter, John Conway had to sign SAUDI ARAMCO Terms and Conditions of Employment ["the agreement"]. Aramco also gave them a compensation worksheet that estimated expenses for the listed site of Ras–Tanura.

Plaintiffs argue that they relied on Defendants promise that they would be located in Ras–Tanura. Based on this reliance, they took several steps which they maintain have left them severely disadvantaged. They sold their car and boat below market value, they prepared their house for leasing, Jeanne Conway quit her job, John Conway turned down an offer for another job and they made several purchases as well as taking other measures in preparation for their life in Saudi Arabia.

While Plaintiffs made such preparations, Defendants informed them they would be assigned to Abqaiq. Plaintiffs maintain that although they greatly preferred Ras–Tanura, John Conway would accept assignment at Abqaiq since it was also on the water. By mid-August of 1991, Plaintiffs had substantially met all of the conditions in the offer letter and agreement. Plaintiffs planned to leave for Saudi Arabia at the end of August. On August 13, 1991, Defendants informed John Conway that his location had been changed from Abqaiq to Udhailayah. (Defs.' Mot. for Summ.J.Ex. A–8). Plaintiffs objected to this location as very remote with none of the services and amenities that either Ras–Tanura or Abqaiq had to offer. When Defendants did not reconsider the assignment site, John Conway withdrew from taking substantive steps towards moving to Saudi Arabia to work for Defendants. (Defs.' Mot. for Summ.J.Ex. A–9). Eventually, the contract was terminated when John Conway refused to work for Saudi Arabian in Udhailayah. (Defs.' Mot. for Summ.J.Ex. A–10).

## III. CAUSES OF ACTION

In a motion for summary judgment, the moving party has the burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). The Court must view all inferences from the evidence in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511.

■ (1) *Breach of Contract.* The Fifth Circuit has established that the "interpretation of a contract is a question of law." *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir.1993); *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of N. Am.*, 957 F.2d 196, 199 (5th Cir.1992); *Kimbell Foods, Inc. v. Republic Nat'l Bank*, 557 F.2d 491 (5th Cir.1977). When a contract is unambiguous, the court must give legal effect to parties' expressed intentions. *Ideal Lease Service, Inc. v. Amoco Prod. Co., Inc.*, 662 S.W.2d 951, 953 (Tex.1983); *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727–28 (Tex.1981). Furthermore, mere disagreement about contract terms and obligations between the parties establishes neither ambiguity regarding the contract nor a question of fact for the jury. *D.E.W., Inc.*, 957 F.2d at 199.

■ On or about May 15, 1991, D.J. Hunter sent a letter to John Conway offering him a position with Saudi Arabian Oil. (Defs.' Mot. for Summ.J.Ex. A–1). This letter clearly stated that it was a conditional offer by Defendants to Plaintiff. The offer of employment was with the company generally and did not specify a particular location. Moreover, the letter even indicated that assignment outside of Saudi Arabia was a possibility. Plaintiff had a number of conditions he had to meet before he could assert rights under the contract. At the bottom of the letter, Plaintiff accepted the offer without attempting to make any changes or additions to the terms. Therefore, his acceptance required that he meet the stated conditions in their entirety to establish a binding contract. For the purpose of this motion, we assume that Plaintiffs had successfully completed or were on their way to completing the conditions in the offer letter. When negotiations are in writing, the existence of a valid acceptance is a question of law for the court to determine. *Gilbert v. Pettiette*, 838 S.W.2d 890, 893 (Tex.Ct.App.—Houston 1992); *Associated Tabulating Serv. Inc. v. Olympic Life Ins. Co.*, 414 F.2d 1306 (5th Cir.1969).

■ In addition to the terms in the offer, he also was required to return the agreement after reading and agreeing to these additional terms. (Defs.' Mot. for Summ.J.Ex. A–3). When a "set of documents executed at the same time, with the same purpose and in the course of the same transaction, [courts should] construe the agreements together." *Calpetco 1981*, 989 F.2d at 1412; *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex.1984); *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981). This document, therefore, became incorporated into the contract between the two parties. The agreement indicates that Plaintiff was an "at will" employee. Even Plaintiffs acknowledge that they had an "at will" employment contract. (Resp. to Defs.' Mot. for Summ.J. ¶ 27). Moreover, the agreement states that "[a]ny such change, representation or agreement altering these terms and conditions of employment must be in writing and signed by" either the company president, the chief executive officer or a vice president. (Defs.' Mot. for Summ.J.Ex. A–3 ¶ 7). Plaintiffs offer no written evidence regarding the assignment of a specific location by one of these required officers.

Plaintiffs further argue that the compensation worksheet indicated that they would be assigned to Ras–Tanura. (Pls.' Mot. for Summ.J.Ex. 2). The offer letter discusses the purpose of this estimated compensation worksheet as "to provide an estimate of the *net* monthly compensation you will receive with SAUDI ARAMCO in Saudi Arabia." (Defs.' Mot. for Summ.J.Ex. A–1 at 1) (emphasis in original). Defendants gave Plaintiffs this worksheet in order to indicate the

average monthly expenses and compensation and is not determinative of the site where Plaintiffs would be assigned. The Supreme Court long ago established that "a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified." *Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 240 U.S. 264, 277, 36 S.Ct. 300, 306, 60 L.Ed. 636 (1916); *Ralston Purina Co. v. Barge Juneau & Gulf Caribbean Marine Lines, Inc.*, 619 F.2d 374, 375 (5th Cir. 1980). Thus, the worksheet is only effective insofar as it establishes an estimation of living expenses that Plaintiffs could expect while working in the Middle East. *Ralston Purina*, 619 F.2d at 375–76; *Hill & Combs v. First Nat'l Bank of San Angelo, Texas*, 139 F.2d 740, 742 (5th Cir.1944). The argument that the worksheet is dispositive of the exact location assignment is unpersuasive since in the next sentence of the offer letter, Defendants indicate that assignment could be outside of Saudi Arabia.

■ Furthermore, Plaintiffs argue that Defendants and their agents implied and stated orally that they would be stationed at Ras–Tanura. "Where the meaning of the contract is plain and unambiguous, a party's construction is immaterial." *Sun Oil*, 626 S.W.2d at 732. Moreover, the agreement signed by John Conway specifically precluded any written or oral alterations so that the agreement and the offer letter "constitute[d] the sole agreement between [Conway] and the Company relating to [his] employment." (Defs.' Mot. for Summ.J.Ex. A–3 ¶ 9). Lastly, Texas law disfavors oral agreements altering the rights of parties to a written employment contract. *McCamy v. Gen. Elec. Supply Corp.*, 185 F.2d 944 (5th Cir.1950); *Rayburn v. Equitable Life Assurance Soc'y Of The United States*, 805 F.Supp. 1401, 1407 (S.D.Tex.1992). *See also Harville Rose Serv. v. Kellogg Co.*, 448 F.2d 1346 (5th Cir.1971), *cert. denied*, 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972). Oral evidence under the parole evidence rule is only admissible to clarify parties' intentions when the writing is ambiguous. *McDaniel v. California–Western States Life Ins. Co.*, 181 F.2d 606 (5th Cir.1950); *Humble Oil & Refining Co. v. Mullican*, 144 Tex. 609, 192 S.W.2d 770

(1946). Since the written documents are not ambiguous, Plaintiffs' oral evidence is inadmissible.

■ As far as damages incurred by Jeanne Conway, she has no privity of contract with Defendants. "[P]rivity of contract is an essential element of recovery in an action based on contractual theory." *Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76, 79 (Tex.Civ.App.—Dallas 1968); *George v. Hall*, 371 S.W.2d 874 (Tex. 1963). Nothing in the offer letter or the agreement establishes privity between Jeanne Conway and Defendants. She did not sign either document. Furthermore, she cannot assert that she is a third-party beneficiary since nothing in the terms of the contract indicate that she is the beneficiary. *B & C Constr. Co. v. Grain Handling Corp.*, 521 S.W.2d 98, 101 (Tex.Civ.App.—Amarillo 1975); *Republic Nat'l Bank*, 427 S.W.2d at 79. Therefore, Jeanne Conway has no separate and distinct claim for breach of contract.

Lastly, Plaintiffs assert that both the offer letter and the agreement were written by Defendants. Therefore, the documents must be "generally construed most strictly against its author." *Republic Nat'l Bank of Dallas v. Northwest Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 115 (Tex.1978). Despite this principle of Texas law as well as the inference established in Plaintiffs' favor under *Anderson, supra*, 477 U.S. at 255, 106 S.Ct. at 2513, the documents succinctly define the agreement between the parties in such a way that a reading would indicate that Plaintiffs had no offer for a specific location and that terms of the contract could be changed only through a specific process. It is possible that John Conway breached the contract since he refused to move to Udhailayah. Thus, Defendants did not breach any contractual obligations owed to Plaintiffs.

■ (2) *Tortious Breach of Contract.* Texas law generally does not award damages for tortious breach of contract. In order to recover under this claim, Plaintiffs must establish both a willful tort and a breach of contract. *Life Ins. Co. Of Virginia v. Murray Inv. Co.*, 646 F.2d 224, 228 (5th Cir.1981), *reh'g granted in part* 651 F.2d 1090 (5th

Cir.1981), *cert. denied* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982); *Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901 (Tex. 1986); *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742 (Tex.1986). *See also Boelens v. Redman Homes, Inc.*, 748 F.2d 1058 (5th Cir.1984), *reh'g denied* 759 F.2d 504 (5th Cir.1985); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986). Therefore, "if the act complained of constitutes *both* a breach of contract and a willful tort, exemplary damages are recoverable." *Life Ins. Co. Of Virginia*, 646 F.2d at 228. Moreover, the Texas Supreme Court has ruled that there must be "at least one finding of an independent tort with accompanying actual damages" in order to obtain punitive damages. *Texas Nat'l Bank*, 717 S.W.2d at 903; *Jim Walter Homes*, 711 S.W.2d at 618. Plaintiffs argue that Defendants had "a common law duty to perform with care, skill and reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe such a duty is a 'tort,' as well as a breach of contract." (Resp. to Defs.' Mot. for Summ.J. ¶ 16). *See Montgomery Ward v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947). Plaintiffs offer no evidence of an independent tort committed by Defendants. Given this contract and the attention given to Plaintiffs' needs in order to move to the Middle East, there is no evidence that Defendants have breached a duty under the law. Lastly, because Jeanne Conway does not have privity of contract, she cannot sue in tort for any breach. *B & C Constr. Co.*, 521 S.W.2d at 102. Since Defendants did not breach their contract with John Conway and Plaintiffs did not allege that Defendants committed an independent tort, the claim for tortious breach of contract cannot stand.

(3) *Promissory Estoppel and Detrimental Reliance.* Plaintiffs argue that even if there was no breach by Defendants, Plaintiffs relied to their detriment based on the belief that they would be assigned to a certain location within Saudi Arabia. In the belief that they would be going to Ras–Tanura, Plaintiffs maintain that they took several measures, including sold their boat and car at less than market value, Jeanne Conway quit her job, John Conway turned down another promising job prospect, prepared their house to be leased and purchased goods in preparation to live in Saudi Arabia. (Pls.' Resp. to Defs.' Mot. for Summ.J. at 9–10). "Under Texas law, a plaintiff urging estoppel must prove that (1) the defendant made a promise, (2) which the defendant should reasonably expect would induce action or forbearance on the part of the plaintiff, (3) which does in fact induce the action or forbearance, and (4) which must be enforced to prevent injustice." *Crenshaw v. Gen. Dynamics Corp.*, 940 F.2d 125, 128 (5th Cir. 1991); *F.D.I.C. v. Royal Park No. 14, Ltd.*, 2 F.3d 637 (5th Cir.1993); *English v. Fischer*, 660 S.W.2d 521 (Tex.1983); *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex.1972). Plaintiffs offer no credible proof that a promise was made. Moreover, any promise by Defendants, in light of all the evidence would be too vague and illusory to support a claim for promissory estoppel. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558 (Tex.Ct.App.—Dallas 1989). Plaintiffs cannot argue promissory estoppel in order to avoid compliance with the parole evidence rule. *Stavert Properties, Inc. v. RepublicBank of Northern Hills*, 696 S.W.2d 278, 282 (Tex.Ct.App.—San Antonio 1985).

█ Since the promise Plaintiffs want to enforce was in conjunction with a valid contract, they cannot assert promissory estoppel. *Pasadena Assocs. v. Connor*, 460 S.W.2d 473, 481 (Tex.Civ.App.—Houston 1970); *Prince v. Miller Brewing Co.*, 434 S.W.2d 232, 240 (Tex.Civ.App.—Houston 1968). When a plaintiff has a valid contract, such as the one in this action, the contract cannot be ignored so that a plaintiff can assert a claim for reliance damages. *Pasadena Assocs.*, 460 S.W.2d at 481; *Prince*, 434 S.W.2d at 240. Even Plaintiffs maintain that the offer letter was a contract. (Resp. to Defs.' Mot. for Summ.J. ¶ 12(2). Nowhere in the contract is Plaintiff, John Conway, guaranteed a specific job site. Therefore, any other damages that Plaintiffs claim pursuant to detrimental reliance cannot be asserted.

█ (4) *Negligent Misrepresentation.* In order to assert a claim of negligent misrepresentation under Texas law, a plaintiff must

establish that the defendant "in the course of his business, profession in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Richter, S.A. v. Bank of America Nat'l Trust & Sav. Ass'n,* 939 F.2d 1176, 1185 (5th Cir. 1991) (quoting *Rosenthal v. Blum,* 529 S.W.2d 102, 104 (Tex.Civ.App.—Waco 1975)), *reh'g denied* 962 F.2d 9 (5th Cir.1992); *Federal Land Bank Ass'n Of Tyler v. Sloane,* 825 S.W.2d 439 (Tex.1991). Since they have no justifiable reason to have relied upon any assertions made to them, Plaintiffs cannot succeed in their claim for negligent misrepresentation. *Granader v. McBee,* 23 F.3d 120 (5th Cir.1994).

After the movant for a motion for summary judgment has met its burden, it is then incumbent upon the non-movant to show that disputed issues of fact remain. *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990). In response, the non-movant must go beyond the pleadings and by "affidavits or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(e)). Plaintiffs have failed to meet this burden.

Therefore as a matter of law, Defendants' Motion for Summary Judgment is hereby GRANTED for the reasons discussed above. Plaintiffs cause of action is hereby DISMISSED with prejudice.

ORDERED.