Stanley L. NEELEY, Individually and T/N SN Associates, Plaintiff-Appellee Cross-Appellant,

v.

BANKERS TRUST COMPANY OF TEX-AS, etc., et al., Defendants-Appellants Cross-Appellees.

Stanley L. NEELEY, Plaintiff-Appellant,

v.

BANKERS TRUST COMPANY OF TEX-AS, Clint W. Murchison, and TeCe Corporation, A Nevada corporation, Defendants-Appellees.

Stanley L. NEELEY, Individually and T/A SN Associates, Plaintiffs-Appellees,

v.

BANKERS TRUST COMPANY OF TEX-AS as Successor Trustee of Henry Gilchrist, Original Trustee of Murchison Children Trusts (Trusts Nos. 1 through 4) and Robert Trust and Marco Trusts (Trusts Nos. 1 and 2), et al., Defendants-Appellants.

Nos. 83–1809, 84–1356 and 84–1357.

United States Court of Appeals, Fifth Circuit.

April 15, 1985.

Rehearing Denied May 13, 1985.

Jenkens & Gilchrist, William D. Sims, Jr., Brian H. Hurst, Dallas, Tex., for plaintiffs.

Michael F. Pezzulli, Dallas, Tex., Peter J. Messitte, Susan L. Launer, Chevy Chase, Md., for defendants.

Before GOLDBERG, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This diversity case teaches anew the importance of getting it in writing. Although the parties did not observe that aphorism, a jury found that appellee Stanley L. Neeley and appellant Clint W. Murchison, Jr., had entered into a contract entitling Neeley to a number of benefits associated with his employment by Optimum Services, Inc. (OSI), a company that Murchison and his family controlled. The jury also determined that Murchison fraudulently induced Neeley into making the agreement. The district court entered judgment for Neeley largely in accordance with the jury's findings, but it overruled part of the verdict by finding

two terms of the contract too indefinite for enforcement and by disallowing fraud damages that it found duplicated the contract award. We hold that the vagueness of some of the terms of the putative agreement vitiated the whole. We further hold, however, that Murchison remains liable for the fraud he practiced upon Neeley. We also modify the judgment to the extent our holding makes the changes necessary. Accordingly, we reverse in part, affirm in part, and remand for further proceedings.

## FACTS

Neeley's association with OSI eventually brought him into contact with Murchison. A California corporation with headquarters in Santa Clara, OSI provided computer services to other companies and to government agencies. Neeley joined OSI in 1968, and from 1974 until his resignation in June 1979 he served as its president. Throughout Neeley's presidency, Murchison functioned as chairman of the OSI board of directors. The Murchison family controlled OSI through holdings of common stock and indirectly through the stock holdings of trusts that Murchison and his brother had set up for the benefit of their children.

In 1974 and 1976, Neeley bought almost 800,000 shares of OSI common stock through an OSI executive incentive plan. He financed the 1976 purchase by executing seven promissory notes totalling some $50,000 payable to the children's trusts. Neeley simultaneously signed an option agreement entitling him to sell his stock to the trusts either at a floor price or at a price that varied according to the profitability of OSI during its 1977 fiscal year.[1] Under this 1976 "put" agreement, Neeley could exercise his option to sell only during the period from July 31, 1977, through the sixtieth day after OSI's independent auditors "certified" the financial statements of the company.

Neeley did exercise his put option, and his action generated the series of transactions underlying this suit. A few days before OSI's independent auditors certified the financial statements of the company, on March 3, 1978, Neeley duly notified the trusts of his intention to put his stock to them under the terms of the 1976 agreement. Two or three days later, Murchison called from his Dallas office to ask Neeley to reconsider his action. Neeley agreed to come to Dallas from his office in Washington, D.C., to discuss the matter. A few weeks later, in late March or early April of 1978, Neeley met in Dallas with Murchison and William R. Roach, another OSI officer who had given notice of his intention to exercise a virtually identical put option.

The discussions among Neeley, Murchison, and Roach produced an oral agreement. Neeley and Roach agreed to withdraw their puts and to waive their rights under the 1976 agreement. Murchison's part of the bargain comprised five promises. He undertook, first, to negotiate a new put option contract, the value of which would rise or fall with the fortunes of OSI over a five to ten year period.[2] The second promise assured Neeley and Roach that they would receive, upon exercising the new put option, at least the amount to which the 1976 agreement entitled them. Murchison agreed, third, to arrange immediate loans of $350,000 each to Neeley and Roach from OSI. Fourth, Murchison would secure an increase in their OSI salaries in an amount sufficient to offset their interest payments on the loans. Finally, Murchison promised to review their salary and bonus packages. Neeley left the negotiations with the understanding that he, Murchison, and Roach would later work out the details of the new agreement.

This 1978 oral agreement bore little fruit. Murchison arranged the two $350,000 loans as part of a credit package to OSI from a

---

1. The agreement entitled Neeley to sell the shares for the greater of $.12 per share or an amount per share equal to seven times the "adjusted operating profit" of OSI for the 1977 fiscal year.

2. Because his brother objected to the 1976 arrangement, Murchison decided to substitute another entity for the children's trusts as the optionor under the new agreement.

California bank. The company extended the loan shortly before the bank approved the credit, and Neeley executed a demand, non-recourse note for $350,000 to OSI on May 11, 1978.[3] Neeley's stock provided the only security for the loan; the non-recourse provision in the note absolved him of personal liability for repayment.

Neeley fulfilled his part of the bargain. The bank's refusal to provide the credit without the personal guaranty of Murchison's brother had supplied the impetus for Neeley's waiver of his old put option. The brother had demanded that Neeley and Roach execute waivers before he would make the guaranty, and Murchison used that demand to induce Neeley and Roach to withdraw their puts and waive their rights despite Murchison's failure to reduce his new agreement with them to writing. Neeley thus executed a waiver on June 21, 1978. In all other respects, the 1978 agreement failed; Murchison did not deliver on his other promises.

For Neeley, the failure did not attain finality until after his 1979 resignation from OSI. He continued to pursue the matter with Murchison. On each occasion, Murchison assured him that he (Murchison) would soon complete a draft contract. Neeley received such a draft in March 1979, but it bore little resemblance to the terms the parties had negotiated a year earlier. The draft established a floor value for Neeley's stock, but it did not set out a formula for increasing the value according to the profitability of OSI, and it contained a clause that would bar Neeley from competing with OSI for business should he leave OSI's employ. No one had mentioned before such a restrictive provision.

Further discussions proved unavailing both before and after Neeley's resignation in June 1979, and the parties eventually resorted to litigation. Murchison started the court proceedings by suing Neeley and Roach in federal court in the Northern District of Texas. Neeley had that action dismissed as to him because the court lacked personal jurisdiction. He then returned the favor, suing Murchison on his home ground, the federal district court for the District of Columbia. That court had no personal jurisdiction over Murchison, and it accordingly dismissed Neeley's action. Neeley then brought this suit on February 19, 1982, seeking specific performance of the 1978 agreement, damages for Murchison's breach of that contract and for his fraud in inducing Neeley to enter into it, as well as exemplary damages.

After the parties had presented their evidence at trial, the district court submitted twenty interrogatories to the jury. The jury's answers found in favor of Neeley in all material respects. The response to Question No. 5 constituted a finding that Murchison and Neeley entered into a contract in 1978. The answers to Questions 6 through 10 represented findings that the agreement consisted of four promises on Murchison's part and that Murchison's breach of the contract damaged Neeley in the amount of $2,263,420.30. In responding to Questions 11 through 16, the jury found that Murchison had made the promises to Neeley with fraudulent intent and awarded compensatory damages of $300,156.00. The jury also awarded Neeley $750,000.00 in exemplary damages, bringing the total to $3,313,576.30.

The district court entered judgment only partially in accordance with the jury's findings. The court first held that under Texas law, which governs in this diversity case, Neeley produced sufficient documentation of the agreement to satisfy the statute of frauds. It also found, however, that Murchison's promises to negotiate a higher put option value and to review Neeley's salary and bonus package lacked sufficient definiteness for enforcement. Holding that the "basic purpose of the contract was to insure that Neeley receive[ ] at least $683,932.00 for his stock at some time in the future," the court nonetheless upheld the remainder of the agreement, entering judgment on the breach claim for $1,488,233.00 less than the jury had awarded. The court

---

**3.** Neeley also executed a $350,000 recourse note, which made him personally liable for repay-
ment, but the jury found that only the non-recourse note carries legal force. *See infra.*

also found that the award on the fraud claim duplicated the breach of contract damages and thus it was disallowed, but the court included in the judgment the full amount of exemplary damages. Finally, the court denied the requests of appellants TeCe Corporation, a Murchison family company, and Bankers Trust Company of Texas, the successor trustee of the children's trusts, for offsets against Neeley's damages, held Murchison and TeCe jointly and severally liable for all damages, and exonerated Bankers Trust. The court entered judgment for $1,525,187.30 on October 20, 1983.

Neeley later petitioned the district court for prejudgment interest pursuant to Tex. Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp.1985), and for attorney fees pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1985). The court denied the prejudgment interest request, finding that Neeley had failed "to show a definite date on which his loss or injury occurred" and that "the amount of [Neeley's] damages was not definitely ascertainable" as of such a date. The court also denied part of Neeley's claim for attorney fees. It allowed him to recover fees he incurred in presenting this case as well as an amount attributable to his defense of the earlier suit that Murchison had brought against him. The court declined, however, to award fees for Neeley's pursuit of his claims in the District of Columbia in view of the dismissal of that suit for lack of personal jurisdiction over Murchison.

Three appeals followed. Murchison appealed the basic judgment as well as the award of attorney fees. Neeley appealed the denial of prejudgment interest and cross-appealed the attorney fee award. Neeley later withdrew his cross appeal, and he now challenges only the denial of prejudgment interest. We consolidated the appeals for oral argument and decision. We address each separately.

## I. THE BASIC APPEAL—NO. 83–1809

### Contract Claims

Murchison's primary attack on the judgment emphasizes the indefiniteness of his promises to Neeley. He urges that the district court correctly struck two of the promises from the contract as too vague to permit their enforcement. He claims that the court erred, however, in failing to hold that his five promises formed an indivisible unit and that, therefore, the failure of even one of them destroyed the entire contract. We are in general agreement with this contention.

Our reasoning proceeds in two steps. We must initially determine whether the two promises the district court struck sufficiently indicated Murchison's legal obligations—whether they evinced enough definiteness—to enable a court to enforce his undertakings. Assuming that we affirm the holding of the district court that they did not, we must then decide whether the indefiniteness of one or more terms vitiated the whole agreement.

### A.

The scope of our review in this aspect of the case requires some explanation. The initial issue of indefiniteness raises a question of law since we need look no further than the terms of the agreement in deciding it. The clearly erroneous standard thus does not constrain review. *Cf. Chapman v. Orange Rice Milling Co.*, 747 F.2d 981, 983 (5th Cir.1984) ("Such an interpretative exercise presents a question of law, not fact, and our review is not limited by the clearly erroneous standard.")

Decision of the second question, however, entails both factual and legal determinations, and the intensity of our review varies accordingly. As we explain, whether the failure of indefinite terms spells destruction of the whole putative agreement depends upon whether those terms form an "essential" part of the bargain. A finding of essentiality reflects a conclusion of law, but, as we also indicate, it rests in part on a factual finding as to the parties' subjective evaluation of the importance of the indefinite terms. The clearly erroneous standard governs scrutiny of such subsidi-

ary findings of fact, but we remain at liberty to decide afresh the legal implications of those findings. *See United States v. Grayson County State Bank,* 656 F.2d 1070, 1075 (5th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed.2d 460 (1982); *cf. Carpenters Amended and Restated Health Benefit Fund v. Holleman Construction Co.,* 751 F.2d 763, 767 n. 7 (5th Cir.1985) (discussing review of "mixed issues of fact and law"). With these limits in mind, we turn to the merits.

### B.

The recurrent problem of indefiniteness in contract actions raises two species of concern. On the one hand, the parties' failure to express clearly their bargain undercuts the inference that they intended their mutual promises to bind them. In that sense, the indefiniteness doctrine focuses upon the formation stage of the contract and involves inquiry into whether the parties meant to contract at all. The other concern relates to the denouement of the agreement rather than its incipience. It stems from the practical difficulties of *enforcing* obscure, imprecise, or otherwise incomplete promises.

Although distinct, the two concerns tend to merge in the formulations courts have fashioned to guide determination of indefiniteness questions. Thus, in *South Hampton Co. v. Stinnes Corp.,* 733 F.2d 1108, 1122 (5th Cir.1984), we stated that "a contract is sufficiently definite if a court is able to determine the respective legal obligations of the parties." *See, e.g., Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Estate of Griffin v. Sumner,* 604 S.W.2d 221, 229 (Tex.Civ.App.1980, writ ref'd n.r.e.). These cases beyond doubt state the correct rule. We nonetheless recognize that examining the facts of a case in light of the concerns that underlie the rule facilitates confident decision.

In this case, the district court declined to enforce Murchison's promises to negotiate a new, more favorable put option and to review Neeley's salary and bonus package. We agree that those commitments must fall for indefiniteness. The first promise represents an agreement to agree. We do not doubt, however, that Neeley and Murchison, both acute businessmen, intended the engagement to have some legal effect. Moreover, the arrangement under the 1976 agreement, which at least suggests a course of dealing, provides some evidence that they had a notion of the terms they meant ultimately to embody in a formal contract. *See, e.g., Morgan v. Young,* 203 S.W.2d 837 (Tex.Civ.App.1947, writ ref'd n.r.e.) (holding that course of dealing may render uncertain terms sufficiently definite); Restatement (Second) of Contracts § 33 comment a. (1981). That the promise formed only a part of an agreement containing definite terms also cuts against a finding that the parties intended no legal consequences to arise from the promise. Thus, although the uncertainty in Murchison's engagement to develop a potentially more lucrative put option may evidence an intent not to contract, we cannot say that the agreement lacks sufficient definiteness on that ground alone.

The difficulty of providing a remedy, however, presents a different matter. The evidence at trial failed to give adequate basis for enforcing the promise. The parties did not agree on the duration of the new put option. Neeley testified he expected the new put to benefit him "somewhere down the road", and Roach stated that it would operate "over the next several years, give us the opportunity to make more money." Moreover, the discussions among Murchison, Neeley, and Roach produced no formula for determining the value of the new put option. They understood only that the value would in some way vary with the profitability of OSI.[4] Such uncertainty

---

**4.** Contrary to Neeley's assertions, we see insufficient basis for inferring that the parties intended the formula under the 1976 agreement to carry over into the new one. All the relevant evidence showed that they contemplated not merely a new but also a different method of calculating the value of the put option. The parties' prior course of dealing, of course, may supply enough certainty to otherwise opaque or unintelligible terms to enable a court to enforce

leaves the trier of fact almost completely at large in attempting to determine an appropriate amount of damages. We thus agree with the district court that Neeley introduced "insufficient evidence ... to permit the jury to place a value on that promise."

■ The promise to review Neeley's salary and bonus package fails for similar reasons. The parties did not agree on an amount, they set no formula, and they did not even relate Murchison's review to profitability. Moreover, testimony as to the amounts Neeley received as bonuses in two previous years hardly establishes a course of dealing which would justify an inference that review of the bonus portion of the package would generate a similar bonus in years to come. Such evidence certainly demonstrates nothing about the salary component of the package. Even assuming that the parties intended the promise to carry legal force, therefore, its lack of definiteness deprived the jury of a basis for enforcing it. The district court properly held it unenforceable. *See Douglass v. Panama, Inc.*, 504 S.W.2d 776, 778 (Tex. 1974) (holding insufficiently definite bonus agreement that did not establish amount or method for determining amount of payment).

### C.

■ We move beyond the decision of the district court, however, and further hold that the entire contract falls with the failure of the indefinite promises. Texas law provides that the omission or failure of an essential element of a contract vitiates the whole. *E.g., Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1026 (5th Cir.1980);

*Upson v. Fitzgerald*, 129 Tex. 211, 103 S.W.2d 147, 150 (Tex.Comm.App.1937, opinion adopted); *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 644 (Tex.App. 1984, no writ); *Guzman v. Acuna*, 653 S.W.2d 315, 319 (Tex.App.1983, writ dism'd). The district court found that the indefinite promises "were subsidiary" to the "basic purpose of the contract ... to insure that Neeley receive[ ] at least $683,-932.00 for his stock at some time in the future." We believe, however, that the promises constituted essential components of the putative agreement.

■ Like most questions of contract law, whether a promise or other term forms an essential part of an agreement depends primarily upon the intent of the parties. Thus, an "essential" promise denotes one that the parties reasonably regarded, at the time of contracting, as a vitally important ingredient in their bargain. Failure to fulfill such a promise, in other words, would seriously frustrate the expectations of one or more of the parties as to what would constitute sufficient performance of the contract as a whole. Courts refuse to enforce agreements that contain indefinite promises or terms they deem essential precisely because judicial clarification of the uncertainty entails great danger of creating intentions and expectations that the parties themselves never entertained.[5]

■ Considering the oral agreement as a whole, we conclude that Murchison's promise to develop a more favorable put option agreement figured centrally in the bargain with Neeley. Neeley's own testimony so

---

them. *See, e.g., Morgan v. Young*, 203 S.W.2d 837 (Tex.Civ.App.1947, writ ref'd n.r.e.); *Grimsley v. Life Ins. Co. of Va.*, 154 S.W.2d 196 (Tex. Civ.App.1941, writ ref'd w.o.m.); *cf. Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1026–27 (5th Cir.1980) (upholding contract where parties agreed on specific formula for determining payments). This case does not present such a situation.

5. In *Dahlberg v. Holden*, 150 Tex. 179, 238 S.W.2d 699 (1951), the court expressed the matter as follows: " 'While courts should avoid, if possible, holding a contract void on the ground

of uncertainty, they have no right to interpolate or to eliminate terms of material legal consequence in order to uphold it.' " 238 S.W.2d at 701 (quoting 13 C.J. *Contracts* § 496). *See Willowood Condominium Ass'n v. HNC Realty*, 531 F.2d 1249, 1252 (5th Cir.1976) ("Just as the Texas courts refuse to speculate as to what was 'reasonable' or what the parties intended, we should not attempt to supply missing terms...."); *Guzman v. Acuna*, 653 S.W.2d 315, 319 (Tex.App.1983, writ dism'd) ("Courts cannot make contracts for the parties.")

demonstrated. He indicated that, in their March 1978 meeting with Murchison, he and Roach had negotiated each of the five promises that composed Murchison's offer:

> Well, Bill [Roach] and I caucused after he had made the proposal, and we both—he said, "Well, what do you think about it?"....
>
> \* \* \* \* \* \*
>
> We came back and said that if he would increase the value—the amount of the loan from two hundred and fifty to three hundred and fifty thousand, and the other terms of the agreement remained the same, if he would do those things, we would substitute a new agreement for that agreement that we had then in force.

Referring to the potential value of the new put option, Neeley testified that "it was only discussed that it would be dependent on how much—how OSI performed, and could be worth three to five million or more, perhaps, depending on how well they performed." In addition, he stated that in June 1978 he hesitated to waive his rights under the 1976 agreement because the parties had not documented their agreement. When Murchison did send him a draft agreement, Neeley rejected it because of its incompleteness:

> Well, it didn't—it didn't cover the substantial upside potential based on the future of OSI and future profitability. And he said that he was going to design something that would be worth three to five million to me, or more, somewhere down the road. It didn't further include any payment of the interest on the three hundred and fifty thousand dollar note, or any personal salary adjustment or salary review for me. So, it—it only established one part of the elements of the—

additional elements of the put, or new put arrangement.

Neeley testified, finally, that he refused another draft in March 1979 partly because "it provided for virtually no upside potential whatsoever" and because "it was not a long-term agreement ... where you would be able to gain considerable upside potential." Roach's testimony followed very similar lines, and Murchison himself stated that the draft agreements "should have" included a new formula for determining the value of the put according to OSI's profitability. We conclude that the parties regarded the promise to develop a more favorable put option as an essential part of their 1978 agreement. To the extent the district court evaluated the parties' intent differently in holding the promise "subsidiary" to the central purpose of the oral argument, it committed clear error.[6]

We also find their view of the promise reasonable. The undertaking represented a large part of the value of the new agreement; Murchison indicated that its worth to Neeley could exceed $3,000,000. The promise, moreover, provided the chief inducement for Neeley to retain his OSI stock and to redouble his efforts to make OSI profitable. As Neeley testified, Murchison offered the new put option "to incentivize me, and also Roach, to continue on with the company and build the company." Apart from the parties' subjective notions, then, the promise to develop a new put option constituted a central element of the new agreement. Given that conclusion, we need not consider whether the promise to review Neeley's bonus and salary arrangement also represented an essential part of the putative contract.

---

**6.** We also point out that our view of the evidence excludes the possibility that the promise to assure Neeley of at least the value of his old put option rights embodied the "basic purpose" of the putative agreement. As our analysis shows, no overarching "basic" purpose underlay the agreement, which instead contained one or more other essential terms. Even viewing the promise in isolation, moreover, we could not conclude that it provided *the* basis of the con-

tract in any meaningful sense. While the promise certainly represented a central element of the contract, just as certainly Neeley would not have agreed to surrender an immediate right to receive $683,920.00 merely in exchange for a right to receive the same amount some years in the future. The survival of the promise thus does not overcome the demise of the indefinite promises so as to permit enforcement of the overall putative agreement.

■ We hold that the indefiniteness of an essential part of Neeley's 1978 agreement with Murchison renders the whole contract unenforceable. As a matter of law, no contract arose. We accordingly reverse the judgment against Murchison on the breach of contract claim.[7]

## Fraud

■ Murchison nonetheless remains liable for his fraud. Ample evidence supported the jury's determination that he fraudulently made the five promises in order to induce Neeley to waive his put rights under the 1976 agreement. *See, e.g., South Hampton Co.*, 733 F.2d at 1120 (setting out elements of fraud under Texas law). Murchison does not, in any event, contest his liability. He has thus abandoned his right to attack the judgment on that ground. *E.g., McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir.1984). The question of damages alone remains for our review.

■ The manner in which the jury calculated its compensatory award prevents us from determining the proper amount of fraud damages. In accordance with the holding in *Life Insurance Co. of Virginia v. Murray Investment Co.*, 646 F.2d 224 (5th Cir.1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982), the district court instructed the jury that it could award fraud damages only if the fraud generated loss in addition to the loss Neeley sustained on account of Murchison's breach of contract. The jury's award thus excluded damages attributable to the breach. Because we have reversed the finding of breach and disallowed contract damages, however, *Life of Virginia* does not bar Neeley from recovering the full amount of damages that arose because of Murchison's fraud. The jury's award of actual damages does not reflect such an amount, and we cannot fix the appropriate scope of recovery.[8]

The proper course lies in remanding for a new trial on the question of actual fraud damages. We may do so where a party has proved liability and submitted proof sufficient to support at least some damages but our modification of the judgment makes it impossible for us to determine the correct amount. *Compare Nissho-Iwai Co. v. Occidental Crude Sales*, 729 F.2d 1530, 1547 (5th Cir.1984) (remanding for retrial of damages where "we cannot tell how much damage the jury awarded" for a component of otherwise appropriate damage award), *with Standard Plumbing Supply v. United States Steel*, 703 F.2d 802, 805 (5th Cir.1983) (declining to remand for new trial on damages where party "could have proved its damages but simply elected not to do so"). Accordingly, we vacate the district court's disallowance of compensatory damages for Murchison's fraud and remand for a new trial to determine Neeley's damages resulting from the fraud.

■ We must also set aside the award of exemplary damages. Texas law permits recovery of exemplary or punitive damages for commission of a willful tort such as fraud,[9] *see, e.g., Life of Virginia*, 646 F.2d

---

7. Our decision obviates any need to determine whether the Texas statute of frauds, Tex.Bus. & Com.Code Ann. § 26.01 (Vernon Supp.1985), also bars enforcement of the putative agreement. Nor should Neeley's claim of promissory estoppel detain us. The same indefiniteness that makes the putative contract unenforceable prevents Neeley from prevailing on a promissory estoppel theory. *See Weitzman v. Steinberg*, 638 S.W.2d 171, 176 (Tex.App.1982, no writ) (refusing to apply promissory estoppel where option contract fatally uncertain).

8. The jury's $300,156.00 award of actual fraud damages does not accurately represent Neeley's losses. The damages, in whatever amount, must reflect the losses he sustained on account of Murchison's fraud in making promises that he (Murchison) never intended to fulfill. The main component of his loss consisted of the value of the put option rights he surrendered in reliance on Murchison's fraudulent promises. The parties agree that the value of those rights approach $700,000.00.

9. We note Murchison's argument that insufficient evidence supported the award for exemplary damages, and we reject it. He contends that he entered into "good faith negotiations on the proposed agreement" and that his actions thus "lacked the willful and malicious character which the courts seek to deter through awards

at 228, but it also provides that "the amount of exemplary damages should be reasonably proportioned to the actual damages found," *Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705, 707 (Tex. 1970); *Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036, 1047 (5th Cir.1984) (quoting *Neeley*). We cannot determine, of course, the reasonableness of the relationship between the existing exemplary award and a compensatory award that the district court has yet to render. Accordingly, we vacate the award of exemplary damages as well and also remand that portion of the case for retrial.

### Note Obligations

■■■■■ Appellants Bankers Trust and TeCe Corporation complain of the district court's refusal to require Neeley to repay certain notes he executed in 1976 and 1978. Bankers Trust argues that the court should have held Neeley liable for the seven promissory notes he executed in connection with his 1976 purchase of OSI stock. TeCe, which holds the $350,000 recourse note that Neeley signed after Murchison arranged a loan in that amount, claims an offset against its liability to Neeley for the value of the note. We find merit only in Bankers Trust's position.

The jury implicitly found that Neeley remains liable for the seven promissory notes. In response to Question No. 7, which asked the jury to fix the damages that arose from Murchison's failure "to purchase Neeley's OSI stock for an amount not less than $683,932.00," the jury answered "value of OSI stock = $635,187.30". The latter amount corresponds exactly to the value of Neeley's put under the 1976 agreement ($683,932.00) less the face amount of the seven notes ($48,744.40). We thus have little difficulty in concluding that Bankers Trust should recover on the notes. Upon remand, the district court should enter judgment against Neeley and for Bankers Trust in the amount of $48,-744.70.[10]

■■■ TeCe, on the other hand, should take nothing on its offset claim. Upon receiving the $350,000 loan in 1978, Neeley executed two promissory notes, each of which covered the full amount of the loan. They differed only in that one (the "recourse" note) made him personally liable for repayment and the other (the "non-recourse" note) absolved him of such an obligation. He signed both because of uncertainty over the tax consequences to him of receiving a non-recourse loan. Neeley's OSI stock alone secured the non-recourse note. TeCe holds the recourse note; a non-party holds the other one.

TeCe's claim founders on the jury's finding that the recourse note carries no legal force.[11] Only the non-recourse note binds Neeley, and that one negates any right to recover directly against him. The district court properly refused, therefore, to permit TeCe an offset against its liability.[12]

of punitive damages." Although cast in terms of an attack on the finding of willfulness, the argument effectively challenges the determination that Murchison defrauded Neeley; fraud imports willfulness. In any event, Murchison's gloss on the evidence does not persuade us that reasonable jurors would necessarily find no fraud. *See, e.g., Estate of Mann*, 731 F.2d 267, 273 (5th Cir.1984) (setting out standard for review of jury's fact determinations). The jury rather pointedly found that Murchison acted willfully. He directs us to no evidence that points decisively to the contrary. It follows that he is not entitled to a judgment barring an award of exemplary damages upon retrial of the damages issue.

10. The award should not include interest on the notes. In offsetting Neeley's recovery only by the face amount, the jury must have concluded that the failure of Bankers Trust to demand payment of interest since 1976 constituted a waiver of its right to recover interest payments.

11. Sufficient evidence supported the finding. Neeley presented a document in which Murchison recognized that the loan to Neeley "is totally secured by your stock in [OSI] and that you have no personal liability beyond that."

12. TeCe argues further that the unenforceability of the 1978 agreement effectively erases the jury's finding that only the non-recourse note remains in force. While granting that the uncertainty of the agreement rendered it wholly unenforceable, we cannot simply ignore the jury's determination of fact. The finding did not depend upon the terms of the putative con-

### Limitations

Murchison's final assault on the judgment involves the statute of limitations governing fraud actions. *See* Tex.Rev.Civ. Stat.Ann. art. 5526 (Vernon Supp.1985) (specifying two-year limitation period). The jury found that Neeley either knew of Murchison's fraud or should have discovered it more than two years before Neeley filed this suit.[13] Murchison argues that article 5526 thus bars Neeley's fraud claim. Anticipating a defense to the statutory bar, Murchison further contends that the jury's finding precludes Neeley from successfully asserting that Murchison fraudulently concealed his (Neeley's) cause of action. Neeley answers that the jury also found justification for his delay in that Murchison misrepresented material facts and thereby induced him to forego legal action until after the statute had run.[14] The misrepresentations, Neeley urges, equitably estopped Murchison from demanding strict application of article 5526.

 While both parties state correct rules, Neeley presents the applicable one. Murchison calls Neeley's defense to limitations "fraudulent concealment", and Neeley characterizes it as "equitable estoppel".

The difference in their nomenclature reflects more than a dispute over semantics; fraudulent concealment and equitable estoppel represent distinct (although kindred) defenses to limitations claims. As the Texas Supreme Court recently observed, "[f]raudulent concealment is based upon the doctrine of equitable estoppel." *Borderlon v. Peck*, 661 S.W.2d 907, 909 (1983). Equitable estoppel, in other words, subsumes fraudulent concealment, which thus constitutes but one species of the broader estoppel doctrine. A party's failure to make out the narrower defense, therefore, does not necessarily prevent him from prevailing on the more general one.[15]

 We hold that the jury's response to Question No. 19 constitutes a finding of equitable estoppel which bars Murchison from invoking article 5526. A party estops himself from asserting limitations where he misrepresents facts, and the other party reasonably relies on the untrue representations in postponing legal action until after the limitation period expires. *See, e.g., O'Dowd v. Johnson*, 666 S.W.2d 619, 621 (Tex.App.1984, writ ref'd n.r.e.); *Gibson v. John D. Campbell and Co.*, 624 S.W.2d 728, 733 (Tex.Civ.App.1981, no

---

tract. The notes enjoyed legal status apart from that agreement, and the jury has determined their legal significance.

**13.** Question No. 18, which the jury answered "we do", asked:

Do you find from a preponderance of the evidence that the falsity of such representations [by Murchison in 1978] as you have found in response to any one of questions 11 through 15 was discovered by Neeley, or by the exercise of reasonable diligence should have been discovered by Neeley prior to February 18, 1980?

**14.** Question No. 19, which the jury also answered affirmatively, asked:

Do you find from a preponderance of the evidence that Clint Murchison misrepresented a material fact or facts and thereby induced Neeley to postpone filing this suit against Murchison until two years or more past the time Neeley discovered, or by the exercise of reasonable diligence should have discovered, the falsity of the representations you have found in response to any one of questions 11 through 15. You are instructed in connection

with this question that this suit was filed on February 18, 1982.

You are instructed in connection with this question that a material fact is one that a reasonable man would attach importance to in determining his choice of action in the transaction in question. In terms of this question, a material fact is one that a reasonable man would deem important in determining whether or not to postpone filing this suit.

**15.** Texas courts have recognized both fraudulent concealment, *see, e.g., Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir.1984); *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex.1983); *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 809 (Tex.1979); *Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex.1974), and equitable estoppel, *see, e.g., O'Dowd v. Johnson*, 666 S.W.2d 619, 621 (Tex.App.1984, writ ref'd n.r.e.); *Gibson v. John D. Campbell and Co.*, 624 S.W.2d 728, 733 (Tex.Civ.App.1981, no writ); *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex.Civ.App.1978, writ ref'd n.r.e.); *Mandola v. Mariotti*, 557 S.W.2d 350, 351–52 (Tex.Civ.App.1977, writ ref'd n.r.e.), as defenses to application of statutes of limitation.

writ); *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex.Civ.App.1978, writ ref'd n.r.e.); *Mandola v. Mariotti*, 557 S.W.2d 350, 351–52 (Tex.Civ.App.1977, writ ref'd n.r.e.); *Lanpar Co. v. Stanfield*, 474 S.W.2d 753, 754 (Tex.Civ.App.1971, writ ref'd n.r.e.); *cf. Meyers v. Moody*, 693 F.2d 1196, 1208 (5th Cir.1982) (exceptions in estoppel cases generally). A deceitful promise to perform an act can satisfy the requirement of a factual misrepresentation; such an undertaking falsely represents a fact—the party's present intention to fulfill the promise. *See O'Dowd*, 666 S.W.2d at 621 ("The evidence of this case is sufficient to show that the appellant deliberately made promises to induce the appellee to delay bringing a cause of action against him."); *Gibson*, 624 S.W.2d at 733 (finding estoppel where "a jury could reasonably infer an intent not to perform on the promises" to repair defects in a house); *Lanpar Co.*, 474 S.W.2d at 754 (upholding estoppel where defendant falsely promised to settle claim if plaintiff did not file suit). The jury in this case found that Murchison misrepresented a material fact, and that Neeley relied on the misrepresentation by delaying legal action. The evidence shows that as late as 1981 Murchison continued to assure Neeley that he (Murchison) would make good on the promises he made in 1978. Thus, article 5526 did not bar Neeley's fraud claim. The record supports the finding of equitable estoppel, and we shall not disturb it.

## II. PREJUDGMENT INTEREST—NO. 84–1356

■ By this appeal, Neeley claims that the district court erred in refusing to award prejudgment interest on his contract damages. In light of our determination that no contract arose, however, the relevant question consists of whether Neeley may recover prejudgment interest on his fraud claim. We note only that Texas law requires an award of prejudgment interest "as a matter of right from the date of the injury or loss, where damages are established as of a definite time and the amount thereof is definitely ascertainable," *Union Bank of Benton v. First National Bank in Mt. Pleasant*, 677 F.2d 1074, 1076 (5th Cir.1982),[16] and that the doctrine applies in tort cases, *see Colonial Refrigerated Transportation v. Mitchell*, 403 F.2d 541, 553 (5th Cir.1968) (fraud).[17] The district court should resolve the merits of Neeley's claim in the first instance.

## III. ATTORNEY FEES—NO. 84–1357

■ The final appeal in these cases concerns the district court's award of attorney fees to Neeley. Murchison objects to the award to the extent it includes amounts attributable to Neeley's defense against Murchison's earlier pre-emptive suit, which the district court there dismissed for lack of personal jurisdiction over Neeley, and to his defending against Murchison's counterclaims in this suit. We do not reach the merits of the argument because we conclude that Texas law does not permit attorney fees in cases based only upon fraud.

In Texas, a party may not recover attorney fees unless an express statutory provision authorizes such an award. *See, e.g., Glass Containers Corp. v. Miller Brewing*

**16.** *Accord Colonial Refrigerated Transp. v. Mitchell*, 403 F.2d 541, 553, 554 (5th Cir.1968); *Evans Prod. Co. v. Shaw*, 276 F.2d 313, 320 (5th Cir.), *cert. denied*, 364 U.S. 819, 81 S.Ct. 54, 5 L.Ed.2d 50 (1960); *City of Texarkana v. Ark. La. Gas Co.*, 118 F.2d 289, 294 (5th Cir.1941), *vacated*, 315 U.S. 780, 62 S.Ct. 579, 86 L.Ed. 1188 (1942); *Smith v. Nat'l Resort Communities*, 585 S.W.2d 655, 660 (Tex.1979); *Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 116 (Tex.1978); *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 488 (Tex.1978); *Black Lake Pipe Line v. Union Constr. Co.*, 538 S.W.2d 80, 95–96 (Tex.1976); *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11, 12 (1897); *Cavnar v. Quality*

*Control Parking*, 678 S.W.2d 548, 554 (Tex.App. 1984, no writ).

**17.** *See also City of Texarkana*, 118 F.2d at 294 (indicating that prejudgment interest as a component of damages "is due as a matter of law if the amount of recovery, whether under a contract or for tort, depends on conditions existing at the due date, though unascertained and disputed till the time of the trial"); *Watkins v. Junker*, 40 S.W. at 12 ("Interest, as damages, may be allowed upon unliquidated demands, whether they arise out of a breach of contract or out of a tort.").

**634**

Co., 643 F.2d 308, 314 (5th Cir.1981); *New Amsterdam Casualty Co. v. Texas Industries*, 414 S.W.2d 914, 915 (Tex.1967); *Tibbetts v. Tibbetts*, 679 S.W.2d 152, 154 (Tex. App.1984, no writ). The statutory provision on which Neeley relies, Tex.Rev.Civ. Stat.Ann. art. 2226 (Vernon Supp.1985), does not encompass fraud claims, and we know of no other statute that does. We conclude, therefore, that Neeley may not recover attorney fees on his fraud claim. We must reverse, of course, the district court's judgment insofar as it awarded fees on the breach of contract cause of action. *Cf. Taylor v. Johnson*, 677 S.W.2d 680, 683 (Tex.App.1984, no writ) (reversing award of attorney fees where court reversed jury findings of fraud and breach of contract).

## CONCLUSION

We summarize our holding. In No. 83–1809, we reverse the judgment of the district court to the extent it was based upon the finding that a contract existed between Neeley and Murchison. The indefiniteness of two essential promises destroyed the entire oral agreement. We uphold the finding of fraud but remand that portion of the case for a trial to determine the amount of Neeley's actual and any exemplary damages. The district court should enter judgment in favor of Bankers Trust on the face amount of the seven notes Neeley executed in favor of its predecessor. The district court is affirmed in its denial of TeCe Corporation's claim on the $350,000.00 note. The statute of limitations does not bar Neeley's fraud claim

because Murchison's deceptive conduct equitably estopped him from invoking the defense of limitations. In No. 84–1356, we leave to the district court the decision upon Neeley's claim for prejudgment interest on his cause of action based upon fraud. In No. 84–1357, we hold that Neeley may not recover attorney fees on the basis of his claim of fraud.[18]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

**18.** Two further matters warrant brief mention. The first involves Neeley's failure properly to invoke the district court's diversity of citizenship jurisdiction. His complaint alleged merely that he "is a resident of the District of Columbia" and that "all Defendants are residents of and/or do business in Texas." An allegation of residency, however, does not satisfy the requirement of an allegation of citizenship, *e.g., Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir.1984) (per curiam), and allegations regarding the citizenship of a corporation must set out the principal place of business of the corporation as well as the state of its incorporation, *e.g., Illinois Cent. R.R. v. Pargas, Inc.*, 706 F.2d 633, 637 (5th Cir.1983). Neeley's pleadings thus

failed to establish diverse citizenship. Exercising our discretion to do so, we permitted Neeley to amend his complaint in this court pursuant to 28 U.S.C. § 1653 (1982). *See Strain*, 742 F.2d at 889 & n. 2; *Pargas*, 706 F.2d at 638. We admonish counsel generally to fulfill strictly their obligation to allege diversity by alleging citizenship, not residence.

The other matter concerns Murchison's violation of Fed.R.App.P. 28(g) and 5th Cir.R. 28.1, both of which limit the length of each party's principal brief to 50 pages. Murchison's brief exceeded the limit. Although we go no further in this case than to note the infraction, we warn counsel that violations may result in the Court's striking of their briefs *sua sponte*.