**Thomas G. MANN, Appellant,**

v.

**TREND EXPLORATION CO., Appellee.**

No. 08–94–00341–CV.

Court of Appeals of Texas, El Paso.

July 11, 1996.

Rehearing Overruled Aug. 21, 1996.

M. McDonnold, Midland, for Appellant.

Harper Estes, Steven C. Kiser, Lynch, Chappell & Alsup, Midland, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a summary judgment in favor of Appellee. Appellant sued Appellee seeking a two percent overriding royalty interest on certain oil and gas leaseholds. Appellee moved for summary judgment, which the trial court granted. We affirm the judgment of the trial court.

## I. *SUMMARY OF THE EVIDENCE*

Appellee is a company located in Midland, Texas, engaged in the business of drilling and operating oil and gas properties. Appellant was employed to do money raising and landwork by Appellee from April 1, 1989 to October 31, 1989 as senior executive vice president. Prior to his employment with Appellee, Appellant worked as an independent landman.[1] In the year prior to his employment, Appellant performed landwork for Appellee in connection with the acquisition of two prospects. One involved assistance in obtaining a farmout[2] on the southwest quarter of section 15 of the Amoco Powell Ranch.[3] For his work, Appellant was paid daywork rates and assigned a two percent overriding royalty interest.

On February 27, 1989, Appellee hired Appellant for a three-year period, terminable by either party at the end of each year of employment. The oral employment contract consisted of a salary of $2,000 per month, which was roughly one-third of Appellant's salary at his previous job. The dispute in this case concerns what the parties agreed upon as additional compensation.

Appellant's notes of the employment meeting indicate that Appellant was to "[p]articipate in success of business from now on— ORRI (overriding royalty interest) + Stock Options, Bonus, or Whatever." Specifically, Appellant contends that he was to receive a two percent overriding royalty on every property on which he worked during his em-

---

1. A landman is an employee of an oil and gas company whose primary duties are the management of the company's relations with its landowners. Such duties include the securing of oil and gas leases, lease amendments, pooling and unitization agreements and instruments necessary for curing title defects from landowners. HOWARD R. WILLIAMS & CHARLES J. MEYERS, MANUAL OF OIL AND GAS TERMS 565 (9th ed.1994).

2. A farmout is a common form of agreement between operators, whereby a lease owner not desirous of drilling at the time agrees to assign the lease, or some portion of it (in common or in severalty) to another operator who is desirous of

drilling the tract. The assignor in such a deal may or may not retain an overriding royalty or production payment. The primary characteristic of the farmout is the obligation of the assignee to drill one or more wells on the assigned acreage as a prerequisite to completion of the transfer to him. HOWARD R. WILLIAMS & CHARLES J. MEYERS, MANUAL OF OIL AND GAS TERMS 389 (9th ed.1994).

3. Appellant also did contract work on the Strain Prospect, for which he was compensated with daywork rates and assigned a two percent overriding royalty interest.

ployment even though Appellee did not actually acquire such property or obtain production thereon until after his termination. However, Appellant does not remember whether the specific amount of two percent was explicitly mentioned during the employment meeting itself. Appellant contends that he understood Appellee's offer to be two percent based upon previous discussions, relationship, and the two pre-employment contracts between the parties.

Conversely, Terry Holland, president of Appellee Trend Exploration Company, characterizes the oral agreement as including a salary, certain benefits, and that Appellant would be compensated in some manner that the deal would bear on any prospects he participated in obtaining or brought to Appellee which were completed. Holland further asserts that there was never any discussion or promise made of an overriding royalty interest or any specific interest on any property.

While he was employed by Appellee, Appellant worked on obtaining from Amoco Production Company a farmout of the balance of the Amoco/Powell leases.[4] However, Appellant was only successful in obtaining a farmout of one quarter section, the northwest quarter of section 2, for which he received a two percent overriding royalty interest.

On October 13, 1989, Appellee informed Appellant that his job was being terminated after October 31, 1989. During the October 13 termination meeting, Appellant and Appellee's president discussed all of the completed and ongoing projects in which Appellant had participated. The parties disagree as to whether the Amoco/Powell Ranch Project was discussed in the termination meeting. Although Appellant asserts that the parties discussed whether he was "involved" in (had an interest in) the Amoco/Powell Ranch,[5] he notes that he did not specifically mention any future Amoco/Powell Ranch acquisitions. Appellee's president does not remember whether Appellant and its vice president denied that the Amoco/Powell leases were specifically mentioned. After Appellant's termination, he performed no further work or services for Appellee and no further work on the Amoco/Powell project.

Eight months after Appellant's termination, Amoco contacted Appellee, providing additional seismic information on the Powell Ranch. After reviewing the data, Appellee obtained a farmout on the southeast quarter of section 9 and drilled a dry hole. In subsequent negotiations with Amoco, Appellee was advised that Amoco would be interested in an extensive geophysical proposal and might be interested in farming out the remaining nonproducing acreage on the Powell Ranch.[6] On October 26, 1990, Appellee and Amoco entered into a contract whereby Appellee would undertake an extensive geophysical survey in exchange for a farmout on all of the remaining unproductive Powell Ranch acreage. Several successful wells have been drilled pursuant to this farmout. Appellant is claiming that such agreement entitles him to a two percent overriding royalty interest on the after-acquired Amoco/Powell leases.

Appellant brought suit on June 30, 1993 for breach of the parties oral employment contract, as supplemented by their oral termination agreement, seeking a two percent overriding royalty interest on the above-described lands covered by the Amoco/Powell leases. Appellee moved for summary judgment, claiming that there existed no genuine issue as to any material fact. The trial court granted summary judgment in favor of Appellee, which precipitated this appeal.

---

4. Appellant's work consisted of several personal meetings with Amoco's personnel, numerous telephone calls, and writing or assisting in the writing of letters to Amoco regarding the Powell Ranch.

5. Appellant's notes from the termination meeting state:
   Still involved with:
      *    *    *    *    *    *
   Amoco F/O on Powell—Glasscock Co.

Appellant alleges that the conversation regarding the Powell Ranch concerned the entire ranch, not just sections 2 and 15, in which Appellant previously had obtained a two percent overriding royalty interest.

6. Prior to this time, Amoco had never expressed any interest in farming out more than a quarter section of the Powell Ranch.

## II. DISCUSSION

Appellant attacks the judgment of the trial court in four points of error. We begin with the standards we employ to review a summary judgment.

The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Cortez v. Liberty Mut. Fire Ins. Co.*, 885 S.W.2d 466, 469 (Tex.App.—El Paso 1994, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of plaintiff's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of plaintiff's cause or claim. *Gibbs v. General Motors*, 450 S.W.2d 827, 828 (Tex. 1970).

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *DeLuna v. Guynes Printing Co.*, 884 S.W.2d 206, 208 (Tex.App.—El Paso 1994, writ denied). Where the defendants are the movants and they submit summary judgment evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *Perez*, 819 S.W.2d at 471; *Bradley v. Quality Serv. Tank Lines*, 659 S.W.2d 33, 34 (Tex. 1983); *Cortez*, 885 S.W.2d at 469.

The trial court's order does not state the specific grounds upon which summary judgment was granted. When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993); *Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 79 (Tex.1989). Thus, Appellant must establish that each independent argument advanced in Appellee's motion is insufficient to support the judgment. *Hernandez v. Kasco Ventures, Inc.*, 832 S.W.2d 629, 632 (Tex.App.—El Paso 1992, no writ); *Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889, 891 (Tex.App.—El Paso 1983, no writ).

In his first point of error, Appellant argues that the summary judgment proof raised genuine issues of material fact concerning every term necessary to make the oral employment agreement sufficiently definite to permit recovery of the two percent overriding royalty interest in the Amoco/Powell leases. We disagree.

■ Appellant and Appellee had no agreement sufficiently certain or definite to be enforced. Regarding the parties employment agreement and any two percent override, Appellant testified as follows:

Q. And the next paragraph, of course, is primarily what we're here talking about today. "Participate in success of business from now on—overriding royalty interest plus stock options, bonus, or whatever." Is that what it says?

A. That's what it says, yes sir.

Q. All right, sir. Was there any discussion of the 2 percent override at this meeting?

A. I don't remember 2 percent specifically. That was the override I had received in the past from the deals I had worked with them, and that's what I was thinking in terms of.

Q. Okay. But you never—

A. I don't remember 2 percent being mentioned specifically.

Q. And you have no recollection of a specific agreement as to the size or amount of the override in any given situation. Is that correct?

A. Well, I was talking—I was thinking 2 percent. Now, we didn't discuss that.

Q. Okay. And although you were thinking it in your own mind, you didn't communicate that to either Scott or Terry or any—

A. Not that I remember.

\* \* \* \* \* \*

Q. Then you go on to list—and just to make sure, you said you were primarily interested in the 2 percent override. But prior to entering into the employment relationship, you never communicated to anyone from Trend that 2 percent was your expectation?

A. Not that I remember.

Similarly, in his affidavit, Appellant averred that he "cannot remember for certain whether or not the figure two percent was mentioned during our discussion, but I am certain that no one mentioned my override's being any amount other than the two percent I had received in our previous dealings." Both Terry Holland and Scott Dufford stated that Appellant's "additional compensation" was on a deal-by-deal basis.

In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992); *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex.1966); *University Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex.App.—San Antonio 1989, no writ). The material terms of the contract must be agreed upon before a court can enforce the contract. Where an essential term is open for future negotiation, there is no binding contract. *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 644 (Tex.App.—Corpus Christi 1984, no writ). In the instant case, it is clear that the parties did not agree on a two percent override.

Appellant contends that, because his two pre-employment dealings with Appellee involved a two percent overriding royalty interest, the parties had a "course of dealing" regarding the amount of the override. We disagree.

The two prior transactions relied on by Appellant occurred before Appellant became an employee of Appellee. Thus, the relationship between the parties and Appellant's compensation package were entirely different. Although a course of dealings is admissible to prove or interpret some of the terms of the contract independently made, no Texas case establishes that a contract can be based solely on a prior course of dealings. *Galaxy Boat Mfg. Co. v. East End State Bank*, 641 S.W.2d 584, 587 (Tex.App.—Houston [14th Dist.] 1982, no writ). Moreover, we do not believe two pre-employment transactions rise to the level of a course of dealing. *See Neeley v. Bankers Trust Co. of Texas*, 757 F.2d 621, 628 (5th Cir.1985) (noting that "testimony as to the amounts (employee) received as bonuses in two previous years hardly establishes a course of dealing which would justify an inference that review of the bonus portion of the package would generate a similar bonus in years to come"). Accordingly, we overrule Appellant's Point of Error No. One. We do not reach the remaining points of error.

Having overruled Appellant's Point of Error No. One, and not needing to reach the remaining points, we affirm the judgment of the trial court.